(No. 16912.—

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* JOHN P. REED, Respondent.

*Opinion filed October 25, 1930—Petition stricken December 5, 1930.*

JOHN L. FOGLE, for relator.

JOHN J. SONSTEBY, and RANSOM E. WALKER, (DANIEL S. WENTWORTH, and HENRY O. NICKEL, of counsel,) for respondent.

Mr. Justice Orr delivered the opinion of the court:

At the June term, 1925, the Chicago Bar Association, as relator, filed an information in this court to disbar John P. Reed, a practicing attorney of Chicago. Before Reed answered the information he asked this court to strike his name from the roll of attorneys and requested the relator to dismiss the information in the event his name was stricken from the roll. The relator agreed to do this if he would enter into the following stipulation:

"It is hereby stipulated that upon the presentation of a motion to the Supreme Court by respondent to strike his name from the roll of attorneys of the State of Illinois, and upon the entry of an order by the Supreme Court striking the name of respondent from the roll of attorneys, that the relator shall thereupon withdraw or dismiss the information filed herein. It is further stipulated that the said John P. Reed, respondent, will not at any time hereafter apply for re-admission or reinstatement on the roll of attorneys of the State of Illinois."

Upon the execution of this stipulation by the relator and Reed the latter's name was stricken from the roll of attorneys and the information against him was dismissed at the October term, 1925. At the December term, 1927, he petitioned that his name be reinstated on the roll of attorneys, asking that his petition should stand as an answer to the original information. During the December term, 1927, this court entered an order allowing his petition to stand as an answer to the information and referring the cause to a master in chancery of the superior court of Cook county as commissioner. The commissioner presented his report at the October term, 1929, and recommended Reed's reinstatement as an attorney, stating as reasons that the humiliation and financial loss suffered by Reed on account of his disbarment, taken in connection with his general good character previous thereto, were, in his opinion, sufficient

punishment. Objections to the commissioner's recommendation were filed by the relator.

The facts are briefly stated. Reed, while an employee of the police department of the city of Chicago as police operator, studied law and was admitted to the Illinois bar in 1902. He had always taken an active interest in furthering the rights of police operators under the Pension law and was himself placed upon a pension in 1914 upon his retirement after twenty years' service. From the date of his retirement he engaged in the active practice of law, making use of the knowledge he had gained of police pension laws and specializing in pension claims. A special committee of the Chicago city council, while investigating the police pension department, unearthed evidence of exorbitant fees collected by Reed in handling pension claims for widows of police operators, and presented the facts to the grievance committee of the relator. This committee then held a hearing and made its report to the relator. Upon reference of this cause to the commissioner it was agreed by the relator and Reed that the evidence heard before the grievance committee be considered as heard by the commissioner without again requiring the personal appearance of the witnesses. This case is submitted upon the report of the commissioner and the briefs filed herein.

There are thirteen charges of misconduct against Reed growing out of the settlement of thirteen pension claims. It is not necessary for us to deal individually with each charge as all allege the same misconduct. The only charge is that Reed, while acting as attorney for wives of insane or deceased police operators applying for pensions, kept for himself, under the guise of fees, sums of money that were grossly excessive when measured by the kind and amount of services rendered. It is alleged by the relator that Reed's fees were unreasonable and extortionate, denoting unprofessional and dishonorable conduct calculated to bring courts of justice into disrepute.

The tabulation given below specifically sets forth the amount of money collected for each claimant, the amount received by each, the amount retained by Reed and the amount unaccounted for:

| Name of Pensioner | Back Pension Collected | Received by Pensioner | Retained by Reed | Unaccounted for |
|---|---|---|---|---|
| Emma N. Bishop | $5,995.00 | $100.00 | $100.00 | $5,795.00 |
| Mary Pollard | 3,727.42 | 500.00 | 500.00 | 2,727.42 |
| Margaret M. Ryan | 4,352.00 | 1,352.00 | 3,000.00 | ........ |
| Winifred Cooney | 4,000.00 | 500.00 | 500.00 | 3,000.00 |
| Anna Doyle | 3,979.59 | 1,000.59 | 2,979.00 | ........ |
| Annette Cook | 7,132.38 | 300.00 | 6,832.38 | ........ |
| Ella M. Wagner | 2,500.00 | 1,000.00 | 1,500.00 | ........ |
| Ella C. Mullane | 3,052.00 | 1,500.00 | 1,552.00 | ........ |
| Frances Langan | 6,500.00 | 2,000.00 | 4,500.00 | ........ |
| Amelia Owens | 1,998.00 | 998.00 | 1,000.00 | ........ |
| Ellen E. Farrell | 1,440.00 | 1,000.00 | 440.00 | ........ |
| Josephine Walton | 950.00 | ........ | 950.00 | ........ |
| Mary A. Walker | 5,798.00 | 50.00 | ........ | 5,748.00 |
| | $51,424.39 | $10,300.59 | $23,853.38 | $17,270.42 |

This tabulation shows that Reed represented thirteen women and secured for them $51,424.39 in back pensions. Of the amount so secured the record shows that the women altogether received only $10,300.59, and that Reed retained in his own hands, under the guise of money earned as fees, the sum of $23,853.38, leaving unaccounted for the sum of $17,270.42. Only four pensions were included in this last mentioned sum. In addition to back pensions, the record shows that in each case the claimant, through Reed's efforts, was put on the pension list and received monthly pension payments in varying amounts.

Almost invariably a claimant for a pension is one who is in dire need of money. To secure efficient public service it has been the policy of the government to offer some guaranty of a decent living for incapacitated public employees, and for their widows and dependents in case of death, disability or old age. This guaranty is evidenced by means of pensions, which are granted upon a finding of facts, gener-

ally without any legal procedure. Taking into consideration a lawyer's ethical obligation and the meager amount of legal knowledge or services required in a pension matter it can readily be seen that the fees of an attorney for services rendered should be most reasonable. The Federal government has recognized this principle through a statute fixing $25 as the maximum fee that an attorney or other person may receive for prosecuting a pension claim. (U. S. Code, title 38, sec. 111.)

The fees charged by Reed in the cases shown were grossly excessive and unreasonable. His conduct shows either an inexcusable ignorance or an utter disregard of all ethical standards of the legal profession. His acts are all the more reprehensible when it is considered that he was dealing with the pension claims of needy widows, from whom he took $23,853.38 as fees while turning over to them only $10,300.59. In a case involving a lesser degree of moral turpitude (*People* v. *Bamborough*, 255 Ill. 92,) this court held that where an overcharge is made "solely for the purpose of permitting the attorney to appropriate to his own use the funds of his client in his hands under the guise of retaining them for fees, the attorney or solicitor guilty of such misconduct should be disbarred and thereafter deprived of the power, under the license of this court, to impose upon other clients." This court cannot condone Reed's conduct by reinstating him as an attorney. He has voluntarily withdrawn his name from the roll of attorneys and stipulated with the bar association that he would not apply for reinstatement. His petition for reinstatement is without merit and is therefore denied.

*Petition for reinstatement denied;*
*Original order confirmed.*