(No. 37791.—

*In re* SAMUEL M. STARR, Attorney, Petitioner.

*Opinion filed Oct. 1, 1976.—Rehearing denied Nov. 12, 1976.*

James M. Spiro, of Chicago (Sidney Z. Karasik, of counsel), for petitioner.

John Dixon, of Chicago, for the Attorney Registration and Disciplinary Commission.

MR. JUSTICE CREBS delivered the opinion of the court:

The petitioner, Samuel Starr, has filed a petition pursuant to Supreme Court Rule 767, requesting that he be reinstated to the roll of attorneys. Ill. Rev. Stat. 1973, ch. 110A, par. 767.

On October 12, 1961, a complaint was filed alleging that the petitioner had converted to his own use funds of four clients totaling $11,500. After hearings on the complaint were conducted by the Chicago Bar Association's Committee on Grievances, the committee filed a report finding that the petitioner's conduct involved moral turpitude and tended to bring the legal profession into disrepute. The committee recommended that the petitioner be disbarred. Before any action was taken by this court, the petitioner moved to have his name stricken from the roll of attorneys, and that motion was granted on January 14, 1964.

On March 5, 1969, the petitioner filed a petition requesting that he be reinstated to the roll of attorneys. The Chicago Bar Association's Committee on Grievances recommended that the petition be denied, and this court so ordered. The petition for reinstatement presently pending before the court was filed on August 7, 1974. After hearings were conducted by a hearing board panel of the Attorney Registration and Disciplinary Commission, the panel made certain findings and recommended that the petition for reinstatement be granted. The Administrator of the disciplinary system filed exceptions to the report of the panel, and the petitioner filed a reply to the

Administrator's exceptions. The findings of the panel, the Administrator's exceptions and the petitioner's reply were submitted to the Review Board of the Attorney Registration and Disciplinary Commission. After hearing oral arguments, the Review Board made additional findings and filed a report recommending that the petition for reinstatement be denied.

The petitioner contends that the evidence heard by the hearing board panel proves that he has been sufficiently rehabilitated so that his petition for reinstatement should be granted. The Administrator for the disciplinary system opposes the petition and argues that the petitioner is not a fit or proper person to resume the practice of law.

The parties entered into a number of stipulations at the commencement of the hearing. It was stipulated that the petitioner had been convicted on April 11, 1967, in the circuit court of Will County of the offense of impersonating a State official. It was also agreed that 12 civil cases in which a Samuel Starr or a Sam Starr was the defendant were pending in the circuit court of Cook County during the time interval between the allowance of petitioner's motion to strike his name from the roll of attorneys and the filing of the instant petition for reinstatement. Another case in which a Samuel Starr was the plaintiff had been filed in the circuit court of Cook County during that same time period. It was further stipulated that the petitioner had made partial restitution to some of his former clients whose funds he had allegedly converted to his own use. The petitioner paid to Irene Cole the entire $4000 claimed by her. He paid to Cora Cole, who had charged the petitioner with converting $4000 of her money, the sum of $1550. The petitioner also paid to Arthur Secondi the entire $1000 claimed by him.

A number of witnesses, including lawyers and judges, gave favorable testimony for the petitioner. Also, in presenting his case, petitioner identified petitioner's exhibit No. 2 as a list of judgments and liens against him,

and that exhibit was admitted into evidence. The exhibit was dated September 21, 1974, and was compiled by the Chicago Title Insurance Company at the petitioner's request. The exhibit revealed that the United States Government had ten liens totaling $152,817.45 against the petitioner. Nine of those liens, totaling $18,518.99, were entered after the petitioner's name had been stricken from the roll of attorneys. It was also revealed that the Department of Revenue of the State of Illinois had acquired three liens against the petitioner, totaling $557.57, during the years 1973 and 1974. Petitioner's exhibit No. 2 further disclosed that an individual had obtained a judgment against the petitioner in 1960 in the amount of $8,097.60. A motion to vacate that judgment had been granted, however, and the record does not apprise us of the current status of that case. The petitioner testified that the largest lien against him, a lien in favor of the United States Government in the amount of $134,298.46, was the result of fraudulent activity on the part of a former business partner. The petitioner maintained that he had never received the income for which taxes should have been paid. The petitioner further testified that he has been making monthly payments to the United States Government and periodic payments to the Illinois Department of Revenue in an attempt to satisfy the other liens against him.

The petitioner also gave testimony concerning his conviction in 1967 for impersonating a State official. The incident which resulted in the criminal charge against the petitioner allegedly took place when the petitioner was working for an attorney as an investigator. The petitioner testified that the attorney for whom he was working hired another attorney to represent the petitioner in court. The petitioner further testified that when he appeared in court the judge asked him how he pleaded to the charge, that his attorney immediately replied that the petitioner pleaded guilty, that the petitioner grabbed his attorney's arm and

tried to stop him and that the judge accepted the plea of guilty and imposed a $100 fine and costs before the petitioner could say anything. The petitioner testified that he subsequently filed a petition in the circuit court of Will County to vacate the plea of guilty, but that petition was denied. Later, he filed a petition with this court asking that the court commission or some other committee be directed to conduct an investigation into the matter, but that petition was also denied.

The sole witness called by the Administrator to testify was John Kelly. The Administrator sought to prove through his testimony that the petitioner had violated the American Bar Association's Code of Professional Responsibility concerning solicitation of clients. Kelly testified that he has employed Burton Gould as his attorney on several occasions. Kelly stated that he had sustained an injury to his foot in 1971 and that he was on his way to a clinic for treatment a few weeks after the accident when he met the petitioner. The petitioner allegedly approached Kelly, called him by his name and asked him if something was wrong with his foot. When Kelly replied that he had injured his foot at work, the petitioner allegedly stated that he knew a good lawyer who could handle the case. The petitioner waited for Kelly at the doctor's office and then drove him to the law office of Burton Gould. While at Gould's office, the petitioner allegedly introduced Kelly to Gould's secretary. A statement was taken from Kelly about the accident and Kelly signed a contract giving Gould the right to represent him. Kelly testified that he was certain that the petitioner was the man who took him to Gould's office in 1971. He implied that his identification of the petitioner was based partially upon the fact that he recognized the red sport coat that the petitioner was wearing in the hearing room.

After Kelly testified, the petitioner again gave testimony in his own behalf. He denied Kelly's story concerning the first meeting between the two men. The petitioner

stated that he first met Kelly in December 1971 in Gould's office. Petitioner insisted he had never received any payment for recommending a potential client to an attorney. The petitioner also stated that the red sport coat allegedly seen by Kelly in 1971 was purchased at Ricky's Store for Men in February 1973. He further testified that he went to Ricky's Store for Men after hearing Kelly's testimony. The petitioner stated that he spoke to Ricky, that Ricky checked the store's sales records and that Ricky then gave him a receipt. The witness identified petitioner's exhibit No. 9 as the receipt obtained on the day of the hearing at Ricky's Store for Men. That receipt was for a sport jacket purchased at the store on February 12, 1973. The petitioner acknowledged that the receipt had been prepared on the day of the hearing.

Sol Max, the owner of Ricky's Store for Men, was then called to testify on behalf of the petitioner. Max testified that he sold the red sport coat in question to the petitioner. He also testified, however, that he did not recall the date on which the sport coat was sold and that he maintains no business records from which he could determine the date. Max did state that the coat was sold in the fall of 1972 or later. On cross-examination, Max stated that petitioner's exhibit No. 9 had not been written by him and that the receipt appeared to be in his wife's handwriting.

The petitioner testified once again after Max's testimony. On cross-examination, he admitted that he had received the receipt for the sport coat from Mrs. Max, that he had supplied the purchase date, and that Mrs. Max had prepared the receipt and given it to him.

An affidavit signed by the petitioner was admitted into evidence at his request. The affidavit was offered in lieu of the petitioner's testimony regarding the 13 civil suits in the circuit court of Cook County which included either a Samuel Starr or a Sam Starr as a party. With respect to the one case in which he was the plaintiff, the

petitioner stated that he had no recollection of the case at the time that he filed the petition for reinstatement to the roll of attorneys. He had subsequently refreshed his memory by calling his attorney, however, and he then recalled that he had been the plaintiff in the case and that the case had been settled. Of the cases in which a Samuel Starr or a Sam Starr was listed as the defendant, the petitioner stated that he had no recollection of any suit or of any incident which could have resulted in a suit in four of those cases. In each of those cases, the records from the circuit court of Cook County, copies of which were admitted into evidence, indicate that the individual named was properly served in person at an address listed in the petition for reinstatement now before this court as a current or past address of the petitioner. The petitioner admits in his affidavit that the appearance form in one of those cases bears his signature. According to the affidavit, the petitioner had no recollection of any suit ever having been filed in five of the other cases, but he did recall incidents which could have resulted in the suits. In two of those five cases, the records of the circuit court of Cook County reveal that the individual named was served at an address listed in the petition for reinstatement as a current or past address of the petitioner. Finally, the petitioner admitted in his affidavit that he does have some recollection of being sued in three of the cases in question.

After hearing the above evidence, the hearing board panel concluded that the petitioner was rehabilitated and recommended that the petition for reinstatement be granted. The Review Board scrutinized the same evidence, found that the petitioner was not a fit or proper person to resume the practice of law and recommended that the petition for reinstatement be denied. We accept the recommendation of the Review Board and deny the petitioner's request to be reinstated to the roll of attorneys.

The petitioner has cited authority for the proposition

that charges of professional misconduct by an attorney must be proved by clear and convincing evidence. (*In re Moore,* 8 Ill. 2d 373.) Petitioner's reliance on *In re Moore* is misplaced. When the petitioner was originally charged with conversion of funds in 1961, the burden to prove the charges belonged to his accusers. A hearing was held, and the Chicago Bar Association's Committee on Grievances found that the charges had been proved. The petitioner then moved to have his name removed from the roll of attorneys, and that motion was granted. Under those circumstances, when the petitioner filed his petition for reinstatement he assumed the burden to establish that he has been rehabilitated and that he is a fit person to again practice law. (*In re Bourgeois,* 25 Ill. 2d 47; see generally Annot., 70 A.L.R.2d 268 (1960).) We find that the petitioner has failed to carry that burden.

Several factors suggest that the petitioner is not a fit and proper person to resume the practice of law. Of primary significance is the fact that the petitioner failed to make certain disclosures in his petition for reinstatement as required by rule. Supreme Court Rule 767 provides that a petition for reinstatement to the roll of attorneys shall include such information as shall be specified by the Attorney Registration and Disciplinary Commission. Rule 11.1(6) of the Attorney Registration and Disciplinary Commission provides that a petition for reinstatement shall include:

> "(6) a statement showing the dates, general nature and final disposition of every civil or criminal action which was pending during the time from petitioner's suspension, disbarment or disbarment on consent to the date on which his petition is filed, wherein the petitioner was either a party or in which he had or claimed an interest ***."

The petition for reinstatement filed by the petitioner refers to his conviction in 1967 for impersonating a government official, but it contains no information concerning any other criminal or civil cases in which the

petitioner may have been involved. In his objections to the petition, the Administrator called attention to the petitioner's failure to include a statement satisfying the requirements of Rule 11.1(6). In his reply, the petitioner stated under oath that he had been involved in no other litigation since January 14, 1964. It was subsequently revealed that a Samuel Starr or a Sam Starr was a party in 13 civil cases pending in the circuit court of Cook County during the time period which preceded the filing of the instant petition. While the petitioner maintains that he has no recollection of many of those cases, the evidence is sufficient to prove that the Samuel Starr or Sam Starr that was involved in most, if not all, of those cases is the same person as the petitioner. The petitioner's failure to comply with Rule 11.1(6) reflects very unfavorably upon his fitness to practice as an attorney.

The petitioner also failed to comply with Rule 11.1(8) of the Attorney Registration and Disciplinary Commission. That rule provides that a petition for reinstatement shall include:

> "(8) a statement showing all financial obligations of the petitioner at the time of filing his petition, together with the dates when the same were incurred, the names and addresses of all creditors, and if any such financial obligations have been reduced to judgment ***."

The petitioner asserted in his petition for reinstatement that, other than his current lease on his apartment, he had no outstanding obligations, judgments or indebtedness. Again, as evidence of his fitness to resume the practice of law, petitioner swore in his petition that he had "no outstanding debts of any kind." It was subsequently disclosed that the United States Government had obtained ten liens against the petitioner amounting to $152,817.45 and that the Illinois Department of Revenue had three liens against the petitioner totaling $557.57. The petitioner argues that, as proof that he did not intend to conceal any evidence from this court, he ordered the

report from the Chicago Title Insurance Company which revealed the liens in favor of the United States Government and the Illinois Department of Revenue. While it is true that the petitioner did submit that report to the hearing board panel, it is also true that he did so only after the Administrator had filed objections to the petition for reinstatement. Those objections challenged the veracity of the petitioner's statements that he had no outstanding debts, financial obligations, or judgments against him.

Furthermore, the petitioner cannot have been unaware of his outstanding tax liability at the time of the filing of his petition. Petitioner testified before the Hearing Board that he had been making monthly payments to satisfy his Federal tax liability pursuant to an agreement with the Internal Revenue Service. A copy of that agreement, dated November 20, 1972, was admitted into evidence, together with copies of money order receipts, the latest bearing a date of June 5, 1974. The petitioner also introduced into evidence a notice of deficiency from the Department of Revenue of the State of Illinois, dated February 27, 1974. That notice alleged that petitioner owed taxes for the years 1971 and 1972. In addition, petitioner identified a notice from the Department of Revenue, dated June 12, 1974, which detailed his outstanding tax liability, as well as a series of receipts for payments to the Department, one of which is dated June 15, 1974. The remaining receipts indicate payments to the Department between March 1974 and October 1974. During his testimony, petitioner admitted that he did owe the taxes in question. In light of this evidence, we are led to the inescapable conclusion that, when petitioner filed his petition for reinstatement on August 7, 1974, he falsely represented his state of indebtedness, thus indicating his unfitness to resume the practice of law.

We also consider it significant that the petitioner has been convicted of a criminal offense since his name was stricken from the roll of attorneys. His conviction of

impersonating a public officer resulted from an incident in which the petitioner was working as an investigator for an attorney. This contradicts the petitioner's evidence which tended to show that he had pursued with integrity a career as an investigator after his name had been removed from the roll of attorneys. The petitioner contends that, since his plea of guilty to the criminal charge of impersonating a public officer was not voluntarily made, his conviction should not be held against him. We note that if the petitioner's testimony concerning his guilty plea in Will County were true, his remedy would have been to seek review of the judgment of conviction.

The petitioner's testimony with respect to the receipt for the red sport coat is also relevant. The petitioner stated to the hearing board panel that he had spoken to Ricky at Ricky's Store for Men regarding the purchase of the coat. He further stated that Ricky then checked the store's sales records and gave him a receipt for that purchase. After Max testified that no records are kept at Ricky's Store for Men from which the date of a past sale could be determined, the petitioner admitted that he had obtained the receipt from Mrs. Max and that she had prepared the receipt pursuant to his directions. We agree with the Review Board that the petitioner's initial testimony concerning the receipt was an attempt to deceive the panel. There was also evidence tending to show that petitioner had filed incorrect income tax returns, but in view of the other evidence, we find it unnecessary to consider this matter.

Even considering all the other evidence in the light most favorable to the petitioner, the above factors are sufficient to convince us that the petition for reinstatement should be denied.

The petitioner also argues that the recommendation of the Review Board should not be followed because the Review Board misapprehended its proper function. The hearing board panel made certain findings of fact in favor

of the petitioner. The Review Board subsequently issued a report in which it stated additional findings of its own. The report of the Review Board did not specifically refer to several of the findings made by the hearing board panel. According to the petitioner, since the Review Board made certain findings of its own and failed to refer to several of the findings made by the hearing board panel, the Review Board must have treated the case as it would a trial *de novo* rather than as a review. We find this argument to be without merit. Our Rule 753(e) provides in relevant part:

"The Review Board may approve the findings of the Hearing Boards, may reject or modify such findings as it determines are not established by clear and convincing evidence, may make such additional findings as are established by clear and convincing evidence, may approve, reject or modify the recommendations, may remand the proceeding for further action or may dismiss the proceeding." (Ill. Rev. Stat. 1975, ch. 110A, par. 753(e).)

For the foregoing reasons, the petition for reinstatement to the roll of attorneys is denied.

*Petition denied.*