(No. 50876.—

*In re* LAWRENCE WARREN THOMAS, Attorney, Petitioner.

*Opinion filed May 24, 1979.*

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for petitioner.

Jack Toporek, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

On March 21, 1973, this court allowed the motion of petitioner, Lawrence W. Thomas, licensed to practice law in 1957, to strike his name from the roll of attorneys. On February 22, 1977, pursuant to Supreme Court Rule 767 (65 Ill. 2d R. 767) petitioner filed a petition for reinstatement. A panel of the Hearing Board of the Attorney Registration and Disciplinary Commission, with one member dissenting, recommended that the petition for reinstatement be allowed. The Administrator filed exceptions, and the Review Board of the Attorney Registration and Disciplinary Commission recommended that the petition for reinstatement be denied.

Between 1962 and 1967 petitioner "purchased" personal injury cases from solicitors. During that period petitioner and Dr. George J. Pope, a physician to whom he referred clients, entered into an arrangement whereby petitioner guaranteed payment of two-thirds of the medical bills of those clients. In a 12-count indictment returned on December 21, 1967, petitioner and Pope were charged with using the mails to defraud several insurance companies. Six counts of the indictment were dismissed on the government's motion, and Pope pleaded guilty to the remaining six counts. Petitioner was charged with sending fraudulent claims to insurance companies for damages

sustained by his clients, including hospital and doctor bills for clients who had not been injured, and exaggerated medical reports. In a jury trial petitioner was found guilty. He was fined $5,000 and sentenced to probation for three years, the first 60 days of which were to be served in jail.

The Court of Appeals for the Seventh Circuit reversed and remanded because of the district court's failure to investigate a charge that several jurors had brought into the jury room a newspaper article prejudicial to petitioner. (*United States v. Thomas* (7th Cir. 1972), 463 F.2d 1061.) Following remand the government moved to dismiss the indictment against petitioner, stating that the motion was made because of doubts that it would be able to present sufficient evidence to convict petitioner. The government stated in its motion that a further consideration in moving for dismissal of the charges was that petitioner had moved that his name be stricken from the roll of attorneys and that he not be allowed to apply for reinstatement for five years. This court had allowed the motion.

Before the Hearing Board, petitioner admitted that he had violated the then-applicable canons of professional ethics by purchasing cases from solicitors and by guaranteeing Dr. Pope two-thirds of the clients' medical bills. Petitioner, however, adamantly denied his guilt in the mail fraud scheme. Petitioner testified that until the indictments were returned he was unaware that Dr. Pope was not actually rendering the treatment described in the reports and bills submitted to the insurance companies.

In its report recommending that the petition for reinstatement be denied, the Review Board found that petitioner continued to protest his innocence of mail fraud; that petitioner's sworn statement that he had not misappropriated money held by him for third parties was "incredibly inaccurate"; that petitioner had failed to make "every conceivable effort toward restitution"; that petitioner "incredibly" testified at his hearing that he knew

only the first names of the solicitors from whom he bought cases; and that petitioner was ignorant of the philosophical theory behind the ethical canons prohibiting solicitation. Petitioner's lack of candor and contrition in these matters, the Review Board said, indicated that he was not sufficiently rehabilitated to practice law.

Disbarment, like other disciplinary sanctions, is imposed to maintain the integrity of the profession, safeguard the public and protect the administration of justice from reproach. (*In re Smith* (1976), 63 Ill. 2d 250, 256.) Although the rules of this court do not specifically define the criteria to be considered, the burden is on the petitioner to prove that he has been sufficiently rehabilitated and is a fit person to practice law. (*In re Starr* (1976), 64 Ill. 2d 407.) Noting the statement in the majority opinion of the court of appeals that the evidence at petitioner's trial "was such that a jury could find guilt beyond a reasonable doubt," and that the dissenting judge stated that "Defendant's guilt is starkly apparent," the Review Board held that, "Under these circumstances, petitioner simply cannot state that he was innocent and at the same time convincingly urge that he has been rehabilitated and is fit to practice law in an understandingly ethical manner." We do not agree. In *In re Hiss* (1975), 368 Mass. 447, 333 N.E.2d 429, the Supreme Judicial Court of Massachusetts considered a similar absence of repentance on the part of a disbarred attorney seeking reinstatement. More than 20 years earlier, Hiss had been convicted on two counts of perjury; his conviction was affirmed on appeal, and he was sentenced to 3½ years in a Federal penitentiary. He was subsequently disbarred. The court considered Hiss guilty as charged, despite his assertions of innocence, but refused to disqualify the petitioner for reinstatement solely because of his failure to repent.

"Simple fairness and fundamental justice

demand that the person who believes he is innocent though convicted should not be required to confess guilt to a criminal *act* he honestly believes he did not commit. For him, a rule requiring admission of guilt and repentance creates a cruel quandary: he may stand mute and lose his opportunity; or he may cast aside his hard-retained scruples and, paradoxically, commit what he regards as perjury to prove his worthiness to practice law. Men who are honest would prefer to relinquish the opportunity conditioned by this rule: 'Circumstances may be made to bring innocence under the penalties of the law. If so brought, escape by confession of guilt *** may be rejected,—preferring to be the victim of the law rather than its acknowledged transgressor—preferring death even to such certain infamy.' *Burdick v. United States,* 236 U.S. 79, 90-91, [59 L. Ed. 476, 480, 35 S. Ct. 267, 269] (1915). Honest men would suffer permanent disbarment under such a rule. Others, less sure of their moral positions, would be tempted to commit perjury by admitting to a nonexistent offense (or to an offense they believe is nonexistent) to secure reinstatement. So regarded, this rule, intended to maintain the integrity of the bar, would encourage corruption in these latter petitioners for reinstatement and, again paradoxically, might permit reinstatement of those least fit to serve." (*In re Hiss* (1975), 368 Mass. 447, 458-59, 333 N.E.2d 429, 437.)

We agree. The record shows that petitioner expressed contrition for his misconduct violative of the ethical standards of the legal profession. He was not convicted of the crimes charged, and repentance for offenses which he has consistently denied is not required for reinstatement.

The Review Board concluded that petitioner's sworn statement that his disbarment "was not in any way related to his misappropriation of monies or his failure to account for any monies held or received by him on behalf of third parties" was "incredibly inaccurate." Petitioner contends that the Commission rule (Attorney Registration and Disciplinary Commission Rule 11.19 (Ill. Rev. Stat. 1975, ch. 110A, following par. 770)) which elicited his statement was ambiguous and that he interpreted "third parties" to mean persons other than his clients, persons such as Dr. Pope or lien claimants. We agree· with petitioner that the applicability of the rule to the present facts is not without question. Petitioner's interpretation of the question is not unreasonable and does not indicate an intent to deceive.

The Review Board concluded that the portion of the medical payments retained by petitioner belonged to his clients, to whom petitioner should make restitution. At his hearing petitioner testified that he had not attempted to locate and make restitution to his former clients. The Review Board found this insufficient and said it was absolutely essential for petitioner to show that he had made every conceivable effort at restitution.

Although whether restitution has been made is relevant in determining whether a disbarred attorney has been rehabilitated, it is not the controlling consideration. (See Annot., 70 A.L.R.2d 268, 291-93 (1960), and cases collected therein.) More than 10 years have elapsed since petitioner dealt with the clients to whom the Review Board would require him to make restitution, and he testified that he no longer has either the files or any information that would enable him to locate those people. Under these circumstances petitioner's failure to show an effort to make restitution does not serve to preclude his being reinstated. We note that, as an alternative, petitioner has offered to contribute "an appropriate sum to some charity or to an attorney's fund" but do not consider that

so doing should be made a condition of reinstatement.

We are not in agreement with two conclusions reached by the Review Board. We agree that petitioner's testimony that he did not know the last names of the solicitors from whom he bought cases may be interpreted to show a lack of candor. On the other hand, petitioner had little to gain by not divulging the solicitors' full names if, in fact, he knew them. Furthermore, it appears credible that persons engaged in admittedly criminal activity (Ill. Rev. Stat. 1971, ch. 13, pars. 15, 16) would not disclose their complete identities.

We do not agree with the Review Board's conclusion that petitioner had no understanding of the philosophy underlying the canons prohibiting solicitation. Petitioner testified before the Hearing Board that "it [solicitation] is conducting yourself in a way that a practitioner should not. It is holding yourself and dealing with people who are not lawyers, paying for business—these are things that should not be in a profession, in ours." More lucid and eloquent explanations can be made, but we are of the opinion that petitioner's statement shows some awareness of the rationale behind the proscription.

A final objection, not discussed in the report of the Review Board but argued by the Administrator before this court, is that petitioner has not demonstrated that his present knowledge of the law qualifies him to return to practice after a five-year absence. While a showing of present knowledge would be helpful in deciding whether an attorney is fit to practice law after a lengthy period of disbarment or suspension, it is not a prerequisite to reinstatement.

Petitioner has produced 39 affidavits from attorneys, stating in various ways that petitioner has learned his lesson and is now rehabilitated. It is undisputed that petitioner has not engaged in the practice of law since March 21, 1973, and from that date does not appear to

have been guilty of any illegality or impropriety. Although the mere passage of time is not a sufficient ground for reinstatement, petitioner has produced enough evidence to prove himself rehabilitated and again fit to practice law in this State. The petition for reinstatement to the roll of attorneys is therefore granted.

*Petitioner reinstated.*