(No. 52974.—)

*In re* EDWARD DONALD GROSHONG, Petitioner.

*Opinion filed December 1, 1980.*

28

Carl H. Rolewick, of Chicago, and Philip Schickedanz, of Springfield, for the Attorney Registration and Disciplinary Commission.

Burt Greaves, of Greaves, Lerner & Gadau, of Champaign, for petitioner.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

On January 31, 1977, the court allowed the motion of petitioner, Edward Donald Groshong, to strike his name from the roll of attorneys. The circumstances which preceded that action are not in dispute and are essentially

as follows. In 1972, petitioner was retained by Miss Alma Bremmer to probate the estate of her deceased sister, Mary Bremmer McGinnis. In July of 1972, it became apparent that petitioner had misappropriated $19,000 from the assets of this estate. On July 27, 1972, full restitution was made to Miss Bremmer, and she continued to employ petitioner to complete the proceedings related to the estate. After disciplinary proceedings in this matter, the board of governors of the Illinois State Bar Association, sitting as commissioners of this court, recommended that petitioner be censured. The court adopted the recommendation of the board of governors, and on October 12, 1973, petitioner was censured. In January of 1976, a complaint was filed against petitioner alleging that he had misappropriated $15,000 from the estate of Lola Neese. Prior to a hearing on this complaint, petitioner began restitution to this estate, and full restitution was accomplished on November 17, 1976. Thereafter, petitioner filed a motion to voluntarily strike his name from the roll of attorneys, as stated previously, and the motion was allowed. At the time that this motion was allowed, however, only petitioner was aware of the fact that the restitution of $15,000 made to the McGinnis estate on July 27, 1972, was made with funds which petitioner, on that same day, misappropriated from the Neese estate.

On August 21, 1978, petitioner filed the present petition for reinstatement. A panel of the Hearing Board of the Attorney Registration and Disciplinary Commission recommended that the petition for reinstatement be denied. Petitioner filed exceptions, and the Review Board recommended that the petition for reinstatement be denied.

The facts introduced into evidence at the hearing before the panel in December 1978 are not in dispute and, briefly summarized, are as follows. Petitioner was admitted to the bar in 1941. Shortly after he entered

practice, he was called to serve in the United States Army. Following his discharge in 1946, he resumed the practice of law. In January of 1951, petitioner was called to serve in the Korean War. He again resumed the practice of law on October 13, 1951. Petitioner stated that as a result of these interruptions of his professional endeavors, it occurred to him that he would have to "play some kind of catch up ball." Petitioner's efforts to "catch up" consisted of several bids for public office, the first of which was successful, and various business ventures, all of which failed. The net result of these activities was that in 1972 petitioner found himself in financial ruin. Petitioner stated that he converted the funds of his clients to satisfy his Federal income tax liability of $20,000. At the time of the conversion, the Internal Revenue Service had instituted collection proceedings against him.

Petitioner admitted that he knowingly failed to disclose to this court the method by which he accomplished restitution to the McGinnis estate. He added that this was not disclosed to counsel who represented him, nor to any members of his family. He stated that, at the time, he was unable to acknowledge and confront his financial and political failures. Petitioner stated that had he been able to confront his failures and discuss his financial problems with his family and friends, he would not have engaged in the "panic stricken and shameful conduct" which led to his disbarment on consent. He stated that his withdrawal from the practice of law gave him the opportunity to reflect on his prior conduct. He noted that while his financial circumstances had not markedly improved—his debts totalling approximately $57,468—his appreciation of his prior conduct had placed his behavior in perspective. He stated that he was no longer attracted to "get rich quick schemes and dreams of political power" and that he requested readmittance to the bar for the limited purpose of providing his son, also an attorney, with the

benefit of his experience.

In addition, petitioner offered the letters and testimony of many members of the bar, the judiciary, his family, and his creditors. All unequivocally recommended his readmission to practice law, several noted his prior contributions to the profession through his representation of indigent clients, and all noted, with the exception of the circumstances which led to his disbarment on consent, his unblemished reputation in the community. Several of these witnesses noted that they were not fully informed of the circumstances which led to petitioner's withdrawal from practice until shortly before the hearing, and one was unaware of the circumstances.

The panel found that petitioner's reputation in the community was unblemished, and it stated that it was impressed with the character witnesses presented on petitioner's behalf. They noted, however, that one witness was unaware of the circumstances of petitioner's withdrawal from practice and that several were only recently apprised of these circumstances. The panel further found that petitioner's financial circumstances had not improved. The panel found that petitioner's financial condition might subject him to "be harassed by" his creditors, and it noted that such "harassment" by the Internal Revenue Service led to the first conversion of his client's funds. In light of these circumstances, the panel ruled that the petition for reinstatement was premature and that petitioner had not met his burden of proof.

The Review Board concurred in the recommendation of the panel, stating as its reasons that the petition was premature and that petitioner had not met his burden of proof on the issue of fitness. In support of its conclusion, the board stated, "Painful remorse has a value in rehabilitation but it is not the whole score. We believe that fitness cannot be demonstrated by an inner renunciation of wrongdoings and a literary purging of one's soul." The

board, discounting petitioner's involvement in community theatre and his long-term association with the "Optimists Club," was of the opinion that petitioner had declined community service and concluded that this was the explicit evidence of rehabilitation required. The board queried, "Is the same kind of secrecy exhibited by petitioner after converting clients' funds being used to conceal his rehabilitation efforts in the community?" The board then noted that petitioner's reputation in the community continued unblemished and that several of his character witnesses were unfamiliar with the details of his withdrawal from practice until shortly before the hearing. The board further found that petitioner's financial condition had not changed significantly. As of the time of filing the petition in this court, petitioner has substantially reduced his financial obligations. With the assistance of his son, petitioner has reduced his indebtedness from $57,468 in 1978 to $23,626.87, of which one-half represents the balance on petitioner's mortgage on his home.

In a petition for reinstatement to the roll of attorneys, the petitioner has the burden of introducing evidence of his rehabilitation, and this must be established by clear and convincing evidence. (*In re Wigoda* (1979), 77 Ill. 2d 154, 158; *In re Nesselson* (1979), 76 Ill. 2d 135, 138.) As we stated in *Wigoda,* "Rehabilitation, the most important consideration in reinstatement proceedings, is a matter of one's 'return' to a beneficial, constructive and trustworthy role." (*In re Wigoda* (1979), 77 Ill. 2d 154, 159.) We believe that petitioner has met his burden and that the petition should therefore be granted.

We note at the outset that we in no way minimize the serious breach of trust which originally led to petitioner's disbarment on consent. We find, however, sufficient evidence of rehabilitation to allow petitioner to resume a position of public trust.

The circumstance which originally led to the peti-

tioner's disbarment on consent—his precarious financial situation—has, through the efforts of petitioner and his son, been significantly improved. We do not find, nor does petitioner suggest, that his prior financial situation in any way justifies or mitigates the seriousness of his misappropriation of clients' funds. We do find, however, that petitioner's improvement of this situation, without incurring additional liabilities, is significant evidence of petitioner's resolve to " 'return' to a beneficial, constructive and trustworthy role" (*In re Wigoda* (1979), 77 Ill. 2d 154, 159). We are also persuaded, as we were in *Wigoda,* that petitioner has lived a blameless life since he voluntarily removed his name from the roll of attorneys. The instant case is thus distinguishable from *In re Starr* (1976), 64 Ill. 2d 407, also involving the conversion of funds, where petitioner's activities subsequent to withdrawal raised serious questions concerning his purported rehabilitation. We especially note the relevance of petitioner's participation in community services and the probative value of such participation. The Review Board's conclusion that petitioner's activities evidenced no interest in community service is unfounded. Testimony concerning these activities, including petitioner's prior representation of indigent clients and his intent to resume this activity if his privilege to practice is restored, was offered at the hearing. While evidence of petitioner's community involvement may not have been overwhelming, we reject the inference, which one might draw from the Review Board's recommendation, that community service is the *sine qua non* of rehabilitation.

We do not find, as the Review Board suggested, that the limited publicity attendant to petitioner's wrongdoings suggests the insincerity of his resolve. Petitioner complied with all requirements of the court when he withdrew from practice, and he has exhibited a great concern in these proceedings. (Compare *In re Neff* (1980),

83 Ill. 2d 20, 26.) That some of his character witnesses were only recently apprised of his misconduct does not render their recommendations meaningless. As we stated in *Wigoda,* "these individuals are morally and legally bound by their oaths not to recommend respondent if they are not satisfied that he is rehabilitated." (*In re Wigoda* (1979), 77 Ill. 2d 154, 163.) Though expressing some reservation, both the panel and the Review Board were impressed with these witnesses, and we find their testimony to be strongly indicative of rehabilitation.

In summary, we believe that petitioner has made significant efforts to demonstrate his resolve to return to a position of public trust, and we find that he has sufficiently demonstrated his rehabilitation. The petition for reinstatement to the roll of attorneys is therefore granted.

*Petitioner reinstated.*