(No. 53441.—)

*In re* DAVID SAUL COHEN, Petitioner.

*Opinion filed January 20, 1981.*

522

SIMON, J., took no part.

Paul E. Thompson, of Thompson & Thompson, of Long Grove, for petitioner.

Charles S. Morgan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

The petitioner, David Saul Cohen, was disbarred on consent on October 24, 1975, when this court allowed his motion to strike his name from the roll of attorneys (73 Ill. 2d R. 762). On January 9, 1979, he filed a petition for reinstatement pursuant to our Rule 767 (73 Ill. 2d R. 767). At the subsequent hearing before the Hearing Board of the Illinois Attorney Registration and Disciplinary Commission, petitioner, five attorneys and a judge of the circuit court of Cook County testified on his behalf. In addition there were presented into evidence letters from petitioner's employer and the executive director of a volunteer organization for which petitioner acted as an officer. All the witnesses recommended reinstatement. The Administrator presented no evidence but cross-examined the witnesses and objected that the petition was premature. The Hearing Board recommended that the petitioner be reinstated, finding that he was fully rehabilitated and fit to resume the practice of law and that no public interest would be served by delaying his reinstatement. The Administrator filed exceptions to these findings. The Review Board, though noting some progress toward rehabilitation by petitioner, found that he had failed to meet his burden of proof and recommended that his petition for reinstatement be denied. Petitioner has filed exceptions to the report and recommendation of the Review Board pursuant to Rules 753(e) and 767 (73 Ill. 2d Rules 753(e), 767).

The petitioner was admitted to the practice of law in Illinois in 1954. He was a sole practitioner in Chicago for a number of years, moved to the north suburbs and later

practiced law in a partnership, all apparently without incident. Petitioner was elected as a trustee of the village board of Morton Grove, a position similar to that of alderman or city councilman. In that capacity, and on at least three occasions in 1971 and 1972, he accepted bribes in the form of cash payments and inflated legal fees relating to action by the village board. In 1975 he was convicted in the United States District Court for the Northern District of Illinois on his plea of guilty to violating the extortion provisions of title 18, section 1951, of the United States Code (18 U.S.C. sec. 1951 (1976)), commonly known as the Hobbs Act. He was sentenced to one year imprisonment, of which seven months was served in a minimum-security facility and 60 days in a work-release program, pursuant to which he clerked for his former partner. A tax deficiency was assessed against the petitioner, due in part to his failure to report income from the bribes.

The petitioner notified all his clients that he would no longer be able to represent them, and notified the Attorney Registration and Disciplinary Commission that he wished to strike his name from the roll of attorneys. He was divorced shortly before his release from custody, and thereafter moved to Florida, where he was employed by a friend in a frozen-food company which has grown greatly during his employment.

Petitioner became associated with a Florida not-for-profit rehabilitation organization known as Transition, Inc. He has served on its board of directors and as its treasurer and vice-president. The organization consists of volunteers who counsel, advise and assist individuals as they leave prison and reenter society.

Petitioner testified at the hearing that he recognized the seriousness of the actions for which he was convicted, and has expressed remorse for the breach of trust as a public official and attorney. His professional career ended,

his home life deteriorated, he served a prison term, and he had to begin anew in a new community and in new employment. Summarily stated, those testifying at the hearing indicated petitioner had been a trusted, well-respected member of the bar, with an excellent reputation; that his misconduct would not be repeated and that he was fit to resume the practice of law. While the Administrator's cross-examination established that some of the witnesses had little contact with the petitioner after he moved to Florida or were unfamiliar with the details of his conviction, it was also indicated by them that their opinions remained unchanged.

The burden of showing by clear and convincing evidence that he is rehabilitated and fit to resume the practice of law rests upon petitioner. (*In re Wigoda* (1979), 77 Ill. 2d 154; *In re Nesselson* (1979), 76 Ill. 2d 135.) While this court has the ultimate responsibility to impose and enforce attorney discipline (*In re Zahn* (1980), 82 Ill. 2d 489; *In re Leonard* (1976), 64 Ill. 2d 398), the findings and recommendations of the Inquiry, Hearing and Review Boards are entitled to and receive our serious consideration. These boards, with the exception of the Review Board, see and hear the witnesses and play important roles in screening and hearing cases, making factual findings in contested matters and developing uniformity in our disciplinary system.

The guidelines set out in our Rule 767 for the hearing panel provide:

> "The panel shall consider the following factors, and such other factors as the panel deems appropriate, in determining the petitioner's rehabilitation, present good character and current knowledge of the law:
>
> (a) the nature of the misconduct for which the petitioner was disciplined;
>
> (b) the maturity and experience of the petitioner at the time discipline was imposed;

(c) whether the petitioner recognizes the nature and seriousness of the misconduct;

(d) when applicable, whether petitioner has made restitution;

(e) the petitioner's conduct since discipline was imposed; and

(f) the petitioner's candor and forthrightness in presenting evidence in support of the petition." (73 Ill. 2d R. 767.)

In *Wigoda* we recently stated: "Rehabilitation, the most important consideration in reinstatement proceedings, is a matter of one's 'return' to a beneficial, constructive and trustworthy role." (*In re Wigoda* (1979), 77 Ill. 2d 154, 159.) In *Nesselson* we noted in allowing the petition for reinstatement that the petitioner expressed recognition that the conduct for which he was disciplined was improper and he showed remorse for his conduct. *In re Nesselson* (1979), 76 Ill. 2d 135.

Here, too, guilt is undisputed and petitioner has expressed profound awareness of the seriousness of his transgressions. It is clear that the repercussions from his breach of the public trust have profoundly affected his professional and personal life. His remorse and regret for the manner in which his actions have reflected upon himself, his profession and those close to him is apparent from this record. The Hearing Board had an opportunity to appraise petitioner's candor and sincerity. Its members apparently felt that his candor, coupled with the recommendations from witnesses who represent a cross section of petitioner's past, before and after disbarment, his present business career, his personal life, and community service, constituted clear and convincing evidence that petitioner is rehabilitated and a fit person to resume the practice of law. The testimony portrays an attorney with an otherwise good reputation who participated in a series of offenses representing a serious breach of public trust. However, he has apparently cooperated fully with all authorities, from investigators to prosecutors to prison

and parole officials, and finally volunteered to assist others making the transition from prison to private life. He voluntarily moved to have his name removed from the roll of attorneys.

The Administrator objects that the petition is premature. The petitioner has now been disbarred for more than five years. While we do not intend to minimize the gravity of his offense, the period of disbarment coincides with the discipline imposed and the time required before reinstatement in other cases. (*In re Groshong* (1980), 83 Ill. 2d 27 (3½ years' disbarment on consent, misappropriation of client funds); *In re Zahn* (1980), 82 Ill. 2d 489 (10 years' disbarment, misappropriation of client funds); *In re Wonais* (1979), 78 Ill. 2d 121 (3½ years' disbarment on consent, solicitation to commit bribery); *In re Wigoda* (1979), 77 Ill. 2d 154 (4½ years' suspension and disbarment on consent, false income tax returns in failing to report a bribe); *In re Thomas* (1979), 76 Ill. 2d 185 (5 years' disbarment on consent, purchasing personal injury actions from solicitors); *In re Kien* (1977), 69 Ill. 2d 355 (18 months' suspension from date respondent voluntarily withdrew from practice, payment to secure testimony of opposition witness); *In re Cook* (1977), 67 Ill. 2d 26 (3 years' suspension from date respondent voluntarily withdrew from practice, perjured testimony to Federal grand jury and United States Senate subcommitee); *In re Leonard* (1976), 64 Ill. 2d 398 (3 years' suspension from date respondent voluntarily withdrew from practice, involvement in bribery of public official).) While each disciplinary and reinstatement action is unique (*In re Clayter* (1980), 78 Ill. 2d 276, 283) reinstatement in this case is not disproportionate to the discipline involved in the cited cases. *In re Wigoda* (1979), 77 Ill. 2d 154, 163.

We agree with the Hearing Board that petitioner has sufficiently demonstrated his rehabilitation. In our judgment no public interest would be served by postponing petitioner's reinstatement. It is accordingly ordered that

he be reinstated upon the role of attorneys admitted to practice law in this State.

*Petitioner reinstated.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.