(No. M.R. 6289.—)
*In re* JAMES STEVENSON CHILDRESS, Petitioner.

*Opinion filed September 26, 1990.*

88

Jeffrey D. Colman and Edward J. Lewis II, of Jenner & Block, of Chicago, for petitioner.

Edward J. Bradley, Sr., of Bradley & Bradley, of Chicago, for the Committee on Character and Fitness for the First Judicial District.

JUSTICE MILLER delivered the opinion of the court:

Following an investigation and hearing, the Committee on Character and Fitness for the First Judicial Dis-

trict refused to certify to the State Board of Law Examiners that petitioner, James Stevenson Childress, possessed good moral character and general fitness to practice law. Childress has filed with this court a petition requesting relief from the committee's adverse decision. (See 113 Ill. 2d R. 708(d).) We deny the petition.

In 1973 petitioner, who was then 16 years old, pleaded guilty in the circuit court of Cook County to charges of rape and robbery and was sentenced to an indeterminate term of four to six years' imprisonment. Petitioner was released from prison in 1977. Following a period of military service, petitioner entered Chicago State University in 1983 and completed the course work required for a bachelor of arts degree two years later. In August 1985 petitioner enrolled as a student at the Southern University Law Center, in Baton Rouge, Louisiana.

Petitioner graduated from law school in May 1989. Shortly before his graduation, he submitted to the State Board of Law Examiners an application requesting permission to take the Illinois bar examination scheduled for July of that year. Under our rules, an applicant such as petitioner who has previously been convicted of a felony must obtain certification of his good moral character and general fitness to practice law before he will be allowed to take the examination. (See 113 Ill. 2d R. 704(b).) The present matter was therefore assigned to an inquiry panel of the Committee on Character and Fitness for the First Judicial District, where petitioner resided. After considering petitioner's application, the inquiry panel declined to provide the required certification.

In accordance with the committee's rules, petitioner's application was then referred to a seven-member hearing panel. After an evidentiary hearing, the panel recommended, by a five to two vote, that petitioner's application for admission to the bar be denied. The full commit-

tee later adopted the hearing panel's recommendation. Following that action, the committee filed with the State Board of Law Examiners a four-page report of its findings and conclusions. (See 113 Ill. 2d R. 708(c).) Of primary concern to the committee were petitioner's criminal record and petitioner's lack of candor in two application forms he submitted to the Southern University law school. The committee concluded in its report that petitioner had not been sufficiently rehabilitated and accordingly declined to certify him for admission to the bar of this State.

Petitioner filed with this court the present challenge to the committee's decision. (See 113 Ill. 2d R. 708(d).) We directed the parties to submit briefs and oral argument on the matter.

The evidence introduced before the hearing panel was, in the main, undisputed. Petitioner was born in Chicago on August 30, 1956, and resided there throughout his youth. Petitioner's parents were divorced when he was five years old. In the following years, petitioner lived first with his mother, then with his father, and later with his maternal grandparents. In August 1970, petitioner enlisted in the United States Army, misrepresenting his age to do so. Though petitioner remained in contact with his mother, he did not inform her of his enlistment or station. Petitioner's mother eventually learned that he was in the service, and she was able to secure his release. Petitioner was honorably discharged from the military in March 1971, and he then returned to Chicago. During the next two years petitioner lived without parental supervision. As a minor, petitioner was charged in about a dozen different delinquency proceedings. With one exception, discussed below, all the cases were stricken or dismissed.

On March 13, 1973, petitioner committed the rape and robbery that resulted in his incarceration. Before

the hearing panel, petitioner testified that he followed the victim into an apartment building and committed the offenses in an elevator there. Several weeks after the attack, the victim identified petitioner as the assailant. Petitioner was initially charged as a juvenile, but the matter was later transferred to the adult docket. In December 1973, petitioner pleaded guilty to charges of rape and robbery and was sentenced to an indeterminate term of four to six years' imprisonment. Petitioner was paroled from prison in July 1977.

Several months after his release from prison, petitioner married a nurse whom he met while he was in prison. Petitioner eventually adopted the woman's three children from a prior marriage. Petitioner began attending college classes in the fall of 1977, and continued to do so for the next few years. He did not, however, earn a degree. In January 1980, petitioner again enlisted in the army. During this period of service, petitioner received two punishments under article 15 of the United States Code of Military Justice (10 U.S.C. §815 (1988)). The first was imposed when petitioner disobeyed an order directing him to send an allotment of money to his wife; the second was imposed when petitioner left his post without permission. Petitioner was also the subject of a summary court martial proceeding (10 U.S.C. §824 (1988)) for stealing the wallet of another soldier, and he served 30 days' confinement for the offense. Petitioner was discharged from the military in August 1982 under other than honorable circumstances.

Following his discharge, petitioner resided for short periods of time in California and Texas. He returned to Chicago in March 1983 and enrolled at Chicago State University several months later. Petitioner completed the course work required for a bachelor of arts degree in May 1985. He then attended a pre-law course sponsored by the Council on Legal Education Opportunity (CLEO)

at the University of Iowa. As described in petitioner's brief, the CLEO program is designed to assist minority students in gaining admission to law school. Petitioner completed the program in August 1985. Later that month, petitioner received a telephone call from an official at the Southern University Law Center, located in Baton Rouge, Louisiana, inviting him to enroll there as a student. Though petitioner had not applied for admission to Southern University, the school had learned of petitioner through his participation in the CLEO program. Petitioner accepted the law school's offer.

Petitioner was given a number of documents to complete upon his arrival at law school. Among those was a one-page form entitled "Preliminary Application," which petitioner filled out and submitted on August 28, 1985. The form asked applicants whether they had "ever been charged with any criminal offense"; following the question were blanks marked "Yes" and "No," and applicants responding to the question in the affirmative were instructed on the next line to explain the nature of the charge. Petitioner's preliminary application shows check marks in both the "Yes" and "No" blanks. Above the check mark in the "No" blank appears the notation "See Il. R.S. chap. 38 12-13." The offense cited by petitioner is criminal sexual assault. (See Ill. Rev. Stat. 1989, ch. 38, par. 12–13.) Petitioner did not cite the offense of robbery, of which he had also been convicted. Indeed, petitioner did not provide, in the space designated, an explanation of any of the charges that had been brought against him.

Before the hearing panel, petitioner testified that in filling out the preliminary application he initially marked the "No" blank. Petitioner said that he immediately decided to correct that response and, using a different pen, made a check mark in the "Yes" blank and wrote in the statutory citation for the offense of rape. Petitioner said

that he was in the law school library at the time and was able to look up the statute there. Petitioner explained that he made the correction with a different ink color because he wanted to highlight the matter to whoever might later view the form. The record before us contains only a black-and-white photocopy of petitioner's preliminary application. The parties agree, however, that on the original document the check mark in the "Yes" blank and the statutory citation appear to have been rendered with a pen different from the one used to mark the "No" blank. In support of his testimony describing the circumstances under which that correction was made, petitioner submitted to the hearing panel the affidavit of Elaine Simmons, director of admissions and associate registrar at the Southern University Law Center. In her affidavit, Ms. Simmons stated that access to student records is restricted, and that students are permitted to examine their records only while supervised.

Several months after petitioner submitted his preliminary application for admission, he completed a second, more extensive application form. Of concern here are petitioner's responses to two of the questions on the permanent application. The first question asked, "Have You Ever Been Charged With a Criminal Offense, Other Than a Traffic Violation[,] or Been the Accused in a Court Martial Proceeding?" The second question asked, "Have You Ever Been Discharged or Dismissed From the Armed Forces Other Than by Honorable Discharge?" Each of the questions was followed by two boxes marked "Yes" and "No" and a blank line bearing the legend, "If Yes, Explain." Petitioner answered both questions in the negative. Before the hearing panel, petitioner acknowledged that both answers were false. He testified that he feared that he would be dismissed from law school if he responded to the questions truthfully.

During his second semester at law school, petitioner was notified by Chicago State University that he had failed two examinations required for graduation. On both the preliminary and permanent applications for admission to the Southern University law school, however, petitioner stated that he received a bachelor of arts degree from Chicago State in June 1985. Petitioner spoke of the matter with the law school's vice-chancellor. Petitioner was told that he would be allowed to finish the current semester but that he would not be permitted to return to school until he completed the requirements for graduation from Chicago State. Petitioner took and passed the necessary examinations that summer but decided to postpone his return to law school by a year. During that period petitioner lived in Chicago, where he was employed in a variety of jobs and did volunteer work. Petitioner returned to law school in the fall of 1987, and he graduated in May 1989.

Before the hearing panel, petitioner presented testimony and affidavits from about 20 persons in support of his application for admission to the bar. These individuals, all of whom were aware of petitioner's criminal record, offered favorable evidence of petitioner's abilities and character. Among the persons who testified or submitted affidavits were professors, academic administrators, and fellow students who had become acquainted with petitioner while he was enrolled in college and law school. Other witnesses and affiants, including a practicing attorney, a Chicago alderman, and a former member of the Illinois Commerce Commission, knew petitioner through his past employment with, among other groups, an organization having an interest in utility regulation. Affidavits were submitted by petitioner's former wife, by one of his adopted daughters, and by his fiancee. In addition to the affidavits and live testimony, a letter of sup-

port was submitted by the minister of the church that petitioner attended while in law school.

The circuit judge who accepted petitioner's guilty plea to the rape and robbery charges and sentenced petitioner for those offenses characterized petitioner's academic achievements since his release from prison as unique. In his testimony the judge declined, however, to offer an opinion on the question whether petitioner should be admitted to practice. The public defender who represented petitioner on those charges submitted an affidavit in his behalf. Now an associate judge, she believed that petitioner should be granted certification for admission to the bar.

In accordance with this court's decision in *In re Loss* (1987), 119 Ill. 2d 186, 196, the committee determined petitioner's rehabilitation by considering his community service and general reputation, his candor in the proceedings, the nature and circumstances of his criminal history, and his present condition. The committee noted that "a distinguished group of witnesses" appeared in petitioner's behalf at the hearing. The committee commented favorably on petitioner's civic and charitable activities and praised his record of community service.

The committee believed, however, that petitioner had not been candid in the application forms he submitted to the Southern University Law Center. Of particular concern to the committee was petitioner's failure to reveal his criminal record on the permanent application. The committee also commented on the uncertainty regarding the date of petitioner's college graduation. The committee noted the correction made to the answer on petitioner's preliminary application regarding his criminal record, but found no clear evidence of when the response was changed.

The committee noted that petitioner has expressed remorse for the offenses he committed in 1973. The

committee believed, however, that petitioner "does not recognize the true gravity of his offense and his need for professional help." The committee found:

"When questioned by panel members as to the other acts of alleged crime and molestation, the application's demeanor was cavalier, and his answers self-serving; he could not remember, or states merely that he may have been strung out on alcohol and drugs on occasion."

The committee concluded that petitioner's rehabilitation had not been clearly established. The committee report states:

"Mr. Childress never satisfactorily explained why he did not reveal his criminal past to the Law School on the permanent application, nor what he would attempt to do at this time to correct the record. His statement to the effect that he feared what would happen to him if he had told the truth did not advance his cause with the committee in its deliberations.

Most of the applicant's testimony before the committee did not show by convincing evidence that he is rehabilitated and ready to have the trust and confidence reposed in him which is required for the practice of law."

Accordingly, the committee refused to certify petitioner's moral character and general fitness to practice law.

Before this court petitioner contends, as a preliminary matter, that the findings and recommendation of the committee's hearing panel should not be accorded their customary deference (see *In re Wigoda* (1979), 77 Ill. 2d 154, 158-59) because not all the members of the panel were present throughout the proceedings. Petitioner would have this court undertake a *de novo* review of the testimony and exhibits presented by the parties to the hearing panel. In support of this contention, petitioner notes that only one member of the seven-member panel was present throughout the entire course of the two-day hearing; of the six other members, five were absent during portions of the hearing, and one was not

able to attend at all. In petitioner's view, the measure of deference that would otherwise be owed to the panel's assessment of witness credibility is considerably lessened, if not eliminated, by these circumstances.

As a general rule, a fact finder's determinations of witness credibility and resolution of disputed questions of fact are entitled to deference on review. (See, *e.g.*, *Midland Hotel Corp. v. Reuben H. Donnelley Corp.* (1987), 118 Ill. 2d 306, 312-13; *Flores v. Industrial Comm'n* (1981), 87 Ill. 2d 48, 54-55; *People v. Novotny* (1968), 41 Ill. 2d 401, 411-12.) The same principle has been applied in proceedings involving attorney admission, discipline, and reinstatement. (See *In re Joyce* (1989), 133 Ill. 2d 16, 29-30 (disciplinary proceeding); *In re Loss* (1987), 119 Ill. 2d 186, 192 (admission proceeding); *In re Carnow* (1986), 114 Ill. 2d 461, 469 (reinstatement proceeding).) It is appropriate to note that, pursuant to rule, the hearing panel was authorized to operate through a quorum of four members. At only one point during the proceedings was a quorum lacking. On that occasion, counsel for the committee specifically asked petitioner and his attorney whether the hearing should be interrupted until a quorum could be restored; petitioner elected to proceed without a quorum, and the hearing continued. It thus appears that one member was present throughout the hearing, and that during the proceedings at least three of the remaining members must also have been present, except for one brief period when a quorum was lacking. Thus, there can be no claim that the hearing panel was not authorized to render a recommendation on this matter. Still, the panel members' absences may indeed serve to lessen the deference appropriately paid to the members' resolution of factual issues. In any event, the panel's recommendation, "although entitled to weight, is advisory, and neither binds this court nor limits its authority to take action." *Loss*, 119 Ill. 2d at 192.

An applicant for admission to the bar has the burden of demonstrating the good moral character and general fitness necessary for the practice of law. (*Loss*, 119 Ill. 2d at 195-96; *In re DeBartolo* (1986), 111 Ill. 2d 1, 5; *In re Ascher* (1980), 81 Ill. 2d 485, 498-99; *In re Martin-Trigona* (1973), 55 Ill. 2d 301, 305.) In *Loss* this court listed the following criteria as relevant to a determination of rehabilitation:

> "(1) [C]ommunity service and achievements, as well as the opinions of others regarding present character; (2) candor before the court; (3) the age of the applicant at the time of the offenses; (4) the amount of time which has passed since the last offense; (5) the nature of the offenses; and (6) the applicant's current mental state." *Loss*, 119 Ill. 2d at 196.

Petitioner contends that he has satisfactorily established his rehabilitation under those criteria. Petitioner asserts that the record in the present matter, including his own testimony and the testimony and affidavits of his character witnesses, demonstrates his service to the community, his candor in the proceedings, and his ability to become a productive member of society. Petitioner submits that his criminal record, though serious, consists of acts occurring more than 15 years ago, and he claims, in essence, that he is no longer the same person who committed those offenses. As we have stated, the committee on character and fitness was concerned primarily with petitioner's criminal history and with the incompleteness and lack of candor he displayed on the two application forms he submitted to his law school.

Petitioner accurately observes that a record of a felony conviction need not by itself automatically preclude one's admission to practice in this State. (*Loss*, 119 Ill. 2d at 196; *In re Mitan* (1979), 75 Ill. 2d 118, 126.) Similarly, attorneys who have been disbarred because of illegal misconduct may later gain reinstatement. (See, *e.g.*,

*In re Fleischman* (1990), 135 Ill. 2d 488; *In re Silvern* (1982), 92 Ill. 2d 188; *In re Kuta* (1981), 86 Ill. 2d 154; *In re Wigoda* (1979), 77 Ill. 2d 154.) In both admission and reinstatement proceedings, the nature of the past misconduct is an important consideration in assessing rehabilitation and a petitioner's current moral character and fitness to practice law. *Fleischman*, 135 Ill. 2d at 496 (reinstatement proceeding); *Loss*, 119 Ill. 2d at 196 (admission proceeding); 107 Ill. 2d R. 767(f) (listing relevant considerations in reinstatement proceedings).

It is clear, however, that the degree of rehabilitation that must be established to warrant admission or reinstatement will depend in large measure on the nature of the wrong committed. Just as a disbarred attorney's subsequent exemplary behavior will not mitigate the seriousness of his misconduct (*In re Alexander* (1989), 128 Ill. 2d 524, 534-35; *In re Berkley* (1983), 96 Ill. 2d 404, 410), so too will an applicant's subsequent exemplary behavior fail to lessen the enormity of an earlier offense. Discussing these concerns, the supreme court of New Jersey has stated:

> "An applicant's attitude and behavior subsequent to disqualifying misconduct must demonstrate a reformation of character so convincingly that it is proper to allow admission to a profession whose members must stand free from all suspicion. [Citations.] The more serious the misconduct, the greater the showing of rehabilitation that will be required. [Citation.] In certain instances, evidence of a positive kind including affirmative acts demonstrating personal reform and improvement will be required in order to establish the requisite degree of rehabilitation. [Citation.] However, it must be recognized that in the case of extremely damning past misconduct, a showing of rehabilitation may be virtually impossible to make. In all cases, the need to ensure the legitimacy of the judicial process remains paramount." *In re Matthews* (1983), 94 N.J. 59, 81, 462 A.2d 165, 176.

We conclude that petitioner has failed to demonstrate the degree of rehabilitation necessary for admission to the bar of this State. The felonies of rape and robbery committed by petitioner on March 13, 1973, were serious offenses. In his brief, petitioner emphasizes that the offenses occurred more than 15 years ago and that apart from the second period of military service, his record since that time has been unblemished. While a person's conduct in the ensuing years is, of course, a relevant circumstance in assessing rehabilitation, we do not believe that the passage of time by itself is sufficient to demonstrate the rehabilitation that is required of someone with a criminal record such as petitioner's. As a minor, petitioner was the subject of repeated delinquency actions, most of which were ultimately dismissed or stricken. Petitioner insisted, as an explanation for many of those matters, that he and his friends were routinely charged by police with a variety of meritless offenses. Throughout the two-day hearing conducted before the hearing panel, petitioner resolutely maintained that he was unable to remember any pertinent facts about most of those proceedings. The only cases that petitioner could specifically recall were two matters that were dismissed and his convictions in 1973 for rape and robbery. As we have stated, the committee characterized petitioner's attitude toward his criminal history as "cavalier."

In filling out the preliminary and permanent law school applications, petitioner failed to respond candidly and completely to several questions concerning his criminal and military records. Though a correction was made to petitioner's preliminary application, it is not clear from the record when that was accomplished. But even if it is assumed that petitioner disclosed the rape conviction on the preliminary application, it is clear that he failed to do so on the permanent application. In addition,

on the permanent application petitioner did not reveal the nature of his discharge from the military. And at no time did petitioner disclose either his 1973 conviction for robbery or his lengthy record of juvenile arrests.

Petitioner emphasizes that he was candid on his application for admission to the bar. Before the hearing panel, petitioner testified that, during the process of completing the bar application, he was initially informed by authorities that most, if not all, of his juvenile records had been destroyed. Petitioner explained that he was able to acquire much of the information regarding his criminal history only by personally conducting an extensive, time-consuming search through the records of various offices. It may be noted that counsel for the committee has made no challenge to the accuracy or completeness of the information submitted in this regard by petitioner.

Petitioner's efforts to reconstruct his criminal record and to disclose that information on his bar application weigh in his favor, but candor in those circumstances does not provide strong evidence of rehabilitation. We have previously commented on the strong incentive that exists for complete disclosure by an applicant on the questionnaire and statement required to be submitted for admission to the bar. Failure to respond truthfully to those inquiries may be grounds for subsequent disciplinary action. (*Loss*, 119 Ill. 2d at 215 (Ryan, J., specially concurring, joined by Clark, C.J., and Moran and Miller, JJ.); *In re Mitan* (1979), 75 Ill. 2d 118, 127.) Thus, in providing truthful and accurate answers to the questions on the bar application, petitioner simply did what was expected of him, and in that way avoided the potentially serious consequences of later disclosure and discipline. His candor in revealing his criminal record on the bar application cannot be said to constitute strong evidence of rehabilitation.

Petitioner may be commended for what he has achieved since his discharge from military service in 1982. During that time, petitioner has graduated from college and law school. Also, petitioner has been employed in a variety of positions, and in those situations he has gained the respect of his colleagues. Moreover, petitioner has contributed to the community by volunteering his services to a number of civic and charitable causes. Petitioner's recent record of community involvement and personal achievement demonstrates his interest in becoming rehabilitated. But an applicant for admission to the bar does not become entitled to certification of his character and fitness simply by fulfilling the educational requirements of our Rule 703 for admission on examination (107 Ill. 2d R. 703), or by participating in civic and charitable activities. In view of petitioner's criminal record, as well as his lack of candor on his applications for admission to law school, we cannot say that there is sufficient evidence of rehabilitation to warrant petitioner's admission to the bar of this State, and we conclude that he has failed to demonstrate the required degree of rehabilitation to warrant certification. Certification of petitioner would, we believe, deprecate the seriousness of his past offenses and tend to undermine the integrity of the profession he wishes to practice.

In the alternative, petitioner contends that several aspects of the procedures followed in the present matter by the hearing panel and by the full committee failed to comport with the requirements of due process under the Illinois Constitution. (See Ill. Const. 1970, art. I, §2.) Petitioner asks that the matter be returned to the committee for further proceedings so that the defects alleged may be corrected.

With respect to the actions of the hearing panel, petitioner complains that those who took part in the decision

did not attend all the sessions. As we have stated, however, a quorum of four members was present for all but one period, and on that occasion petitioner waived the requirement of a quorum and expressly chose to go ahead with the hearing. Petitioner may not now contend that the panel was without authority to act. Petitioner also complains that, though he learned of the numerical division of the hearing panel's vote on his application, he was not told how each individual member voted. In essence, petitioner contends that the panel was required to reveal to him each panel member's vote. Petitioner cites no authority in support of this proposition, however, and we do not believe that disclosure of each member's vote was a necessary element of due process.

With respect to the action of the full committee, petitioner first complains that he was never advised of the votes cast by the individual members of the full committee, and that he was not told what materials concerning the case were provided to the members prior to their decision. Again, we do not consider that public disclosure of those votes is necessary. In addition, we note from the record that the parties' briefs and the transcript of the hearing were made available to the committee members.

Petitioner also notes that less than a quorum of the full committee voted on the hearing panel's recommendation. According to committee counsel, and to an affidavit submitted by the committee administrator, 10 of the 26 persons who serve on the committee were present when the hearing panel recommendation was adopted in this case. At oral argument, counsel for the committee acknowledged that the committee has not specified what quorum is necessary for the committee to act. Petitioner observes that under the rule at common law, a simple majority of the members of a body constitute a quorum, in the absence of a contrary provision. (*Federal Trade Comm'n v. Flotill Products, Inc.* (1967), 389 U.S. 179,

183, 19 L. Ed. 2d 398, 402, 88 S. Ct. 401, 404.) Our rules require that certification be determined by the full committee, and not by the hearing panel. See 113 Ill. 2d R. 708(c); *Loss*, 119 Ill. 2d at 201 (Ryan, J., joined by Clark, C.J., and Moran and Miller, JJ.) (certification decision must be made by full committee).

If there was a defect in the proceedings below, it lay in the failure of a quorum of the full committee to make the certification decision. A not-dissimilar problem occurred in *Loss*. In that case, although all the members of the full committee eventually voted on the matter, recommending by a majority that the applicant be certified for admission, the purported certification was invalid. It appeared that some of the members' votes were cast by telephone, mail, or other means not involving presence at a meeting attended by a quorum, yet the committee had not adopted rules authorizing alternative methods of voting. The failure of the full committee to properly render a decision was not found, however, to violate the applicant's procedural rights, and this court considered the matter on the existing record. Like the applicant in the present case, the applicant in *Loss* had been afforded a complete hearing by the hearing panel, and he had subsequently been allowed to present the matter to this court. (*Loss*, 119 Ill. 2d at 202-03 (Ryan, J., joined by Clark, C.J., and Moran and Miller, JJ.).) Accordingly, a majority of the members of this court concluded that the applicant's due process rights had not been violated. We believe that the same analysis is relevant to the present case, and we do not consider that the failure of a quorum of the committee to act on petitioner's application necessitates further proceedings by the committee.

For the reasons stated, the petition is denied.

*Petition denied.*