Original
No. SMC-96-006

APPLICATION OF T.J.S.

April 3, 1997

*Nelson, Kinder, Mosseau, and Gordon, P.C.,* of Manchester (*Martha V. Gordon* by memorandum and orally), for the applicant.

*T.J.S.,* orally, *pro se.*

*James L. DeHart,* orally, for the committee on character and fitness.

BROCK, C.J. The applicant, T.J.S., seeks admission to the New Hampshire Bar. The committee on character and fitness (committee), by majority vote, concluded that the applicant had not satisfied his burden of proving sufficient character and fitness to practice law in this State. In response to the adverse recommendation, the applicant appeared before this court to show cause why his application for admission should not be denied. *See* SUP. CT. R. 42(5)(k). Because it is "[t]he duty and power of the court to guard its portals against intrusion by men and women who are mentally and morally dishonest, unfit because of bad character, evidenced by their course of conduct, to participate in the [practice of] law," *In re Monaghan,* 222 A.2d 665, 670 (Vt. 1966), we deny T.J.S.'s application.

In 1986, the applicant was convicted on six counts of felonious sexual assault of two of his female students while he was employed as a junior high and high school teacher. *See* RSA 632-A:3 (1996). He served a total of approximately four years in the State Prison. While incarcerated, he participated in sex offender counseling and was by all reports a model prisoner. Since his release from prison, the applicant has married, graduated from law school, successfully completed the bar examination, and currently works for a law office in a nonlawyer capacity.

In response to a question on the bar application, the applicant disclosed his felony convictions. Subsequently, the committee undertook an extensive review of the applicant's background and rehabilitative efforts. The committee's investigation included sev-

eral personal interviews with the applicant, review of his references and other background material, and evaluation of the opinions of several mental health practitioners. At the conclusion of a final hearing on March 8, 1996, the committee, by majority vote, recommended that the applicant's petition be denied.

As a general rule, we accord deference to a fact finder's determination of witness credibility and resolution of disputed questions of fact. *See Budnitz' Case*, 139 N.H. 489, 491, 658 A.2d 1197, 1198 (1995). Nevertheless, the committee's recommendation is advisory only and "neither binds this court nor limits its authority to take action." *In re Childress*, 561 N.E.2d 614, 619 (Ill. 1990); *see* SUP. CT. R. 42(5)(f).

■ To be admitted to practice law in this State, an applicant must possess "good moral character." RSA 311:2 (1995). The burden of proving his or her "good moral character" lies with the applicant. *Application of Appell*, 116 N.H. 400, 401, 359 A.2d 634, 636 (1976); SUP. CT. R. 42(5)(f). Although the applicant maintains that he may prove his fitness to practice law by a mere preponderance of the evidence, we hold that, as in a petition for reinstatement or readmission, *see* PROF. CONDUCT COMM. R. 2.13(b), the applicant must prove his "good moral character" by clear and convincing evidence. *See In re Mustafa*, 631 A.2d 45, 47 (D.C. 1993); *In re Jaffee*, 806 P.2d 685, 687 (Or. 1991); *see also Application of Hughes*, 594 A.2d 1098, 1101 (Me. 1991).

"Good moral character" refers to "those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility, that have, throughout the centuries, been compendiously described as 'moral character.'" *Schware v. Board of Bar Examiners*, 353 U.S. 232, 247 (1957) (Frankfurter, J., concurring). Among the essential aspects of good character are "respect for the rights of others and for the law, fairness, trustworthiness and reliability, and a professional commitment to the judicial process and the administration of justice." *In re Manville*, 494 A.2d 1289, 1298 (D.C. 1985) (citations omitted).

A prior felony conviction is not, *per se*, a bar to admission. *See generally* Carr, Note, *The Effect of Prior Criminal Conduct on the Admission to Practice Law: The Move to More Flexible Admission Standards*, 8 GEO. J. LEGAL ETHICS 367 (1995). The nature of the wrong committed, however, is central to the determination of present character and fitness to practice law, *see In re Childress*, 561 N.E.2d at 620, and a prior conviction for certain serious crimes raises a presumption of unfitness, *see In re Manville*, 538 A.2d 1128, 1138 (D.C. 1988) (Terry, J., dissenting). Indeed, there are some

crimes which are so serious that it may be virtually impossible for the applicant to rebut this presumption. *Cf. In the Matter of Dortch*, 687 A.2d 245, 252 (Md. 1997) (Raker, J., concurring) (analyzing rehabilitation factor of American Bar Association test); *see also Application of Matthews*, 462 A.2d 165, 176 (N.J. 1983) (same).

■ A prior conviction for felonious sexual assault raises a presumption of unfitness. *Cf. Otis' Case*, 135 N.H. 612, 618-19, 609 A.2d 1199, 1203-04 (1992) (attorney's sexual assault of client warrants disbarment). The legislature has recognized that the commission of felonious sexual assault is sufficient basis to deprive a person of certain rights and privileges. By law, a person convicted of felonious sexual assault can never again be certified to teach in this State, *see* RSA 189:13-a, VI (Supp. 1996), obtain a liquor license, *see* RSA 178:25 (1994), or possess a firearm, *see* RSA 159:3, :3-a (1994). In addition, RSA 632-A:10, I (1996) makes it a felony for such a person to engage in

> employment or volunteer service involving the care, instruction or guidance of minor children, including, but not limited to, service as a teacher, a coach, or worker of any type in child athletics, a day care worker, a boy or girl scout master or leader or worker, a summer camp counselor or worker of any type, a guidance counselor, or a school administrator of any type.

Plainly stated, the applicant's felony convictions for sexually assaulting his adolescent female students conclusively prove that at that time, the applicant was devoid of "good moral character." *See Matter of Prager*, 661 N.E.2d 84, 89 (Mass. 1996). It is our task to determine whether he is sufficiently rehabilitated so as to remove the serious taint of his prior unfitness, *Application of Matthews*, 462 A.2d at 176, and displays a present "good moral character which emphasizes honesty, fairness, and respect for the rights of others and for the laws of this state and nation." *Petition of Wright*, 690 P.2d 1134, 1136 (Wash. 1984) (quotation omitted).

■ When an applicant for bar admission has engaged in serious misconduct, the following factors should be considered in determining current character and fitness to practice law:

> the applicant's age at the time of the conduct
> the recency of the conduct
> the reliability of the information concerning the conduct
> the seriousness of the conduct
> the factors underlying the conduct

the cumulative effect of conduct or information

the evidence of rehabilitation

the applicant's positive social contributions since the conduct

the applicant's candor in the admissions process

the materiality of any omissions or misrepresentations

AMERICAN BAR ASSOCIATION SECTION OF LEGAL EDUCATION AND ADMISSIONS TO THE BAR AND THE NATIONAL CONFERENCE OF BAR EXAMINERS, COMPREHENSIVE GUIDE TO BAR ADMISSION REQUIREMENTS *1992-93* (1992). With those factors that apply to the applicant as a template, we analyze T.J.S.'s application.

The sexual assaults for which the applicant was convicted occurred when he was in his late twenties. Although the applicant's expert reported that unfortunate childhood experiences kept T.J.S. from "fully develop[ing]," this State holds persons eighteen years of age and older to an adult standard of conduct, *see* RSA 21:44 (1988). Indeed, in some circumstances persons as young as thirteen may be held criminally responsible for their actions. *See* RSA 628:1 (1996). Consequently, we conclude that the applicant's conduct, occurring after he had completed college and was employed in his chosen field, "was the product of neither inexperience nor immaturity." *Matter of Prager*, 661 N.E.2d at 92.

More than ten years have passed since the latest sexual assault for which the applicant was convicted. We note, however, that the applicant was incarcerated for four of those years and released from parole only three years prior to the final hearing before the committee. Although no fixed number of years of good behavior is required to prove "good moral conduct," *In re Polin*, 630 A.2d 1140, 1141 (D.C. 1993), the period since the end of the applicant's sentence is relatively brief. *See Petition of Wright*, 690 P.2d at 1137.

The applicant has been honest and straightforward in revealing his felony convictions to his law school, his employers, and the committee. We note, however, that failure to do so on the bar application could subject the applicant to subsequent disciplinary procedures. *See* N.H. R. PROF. CONDUCT 8.1. Thus candor in these circumstances was merely what was required. *See In re Childress*, 561 N.E.2d at 621.

His candor before the committee, however, was not as clear. The committee found the applicant to be "too articulate, glib and adept at explaining away his past behavior." Additionally, it found his explanation of the events that precipitated the withdrawal of one of his letters of support "not believable."

The six sexual assaults against the two students for which the applicant was convicted are grave indeed. They do not encompass

the entirety of the applicant's offenses, however. The applicant admits to having improper sexual relations over a course of three years with eleven female students between the ages of thirteen and seventeen. His conduct ranged from kissing some of the students to sexual intercourse with others.

Evidence of rehabilitation weighs strongly in an applicant's favor. "The concept that human redemption is possible and valuable is both well established in law and premised upon long-standing, even ancient traditions." *Matter of Prager*, 661 N.E.2d at 89 (quotation omitted). Of course, "[t]he more serious the misconduct, the greater the showing of rehabilitation that will be required." *Application of Matthews*, 462 A.2d at 176. Moreover, "it must be recognized that in the case of extremely damning past misconduct, a showing of rehabilitation may be virtually impossible to make." *Id.*

We note that "the applicant's determination to conclude his criminal activity apparently did not flow from an 'inborn' resolve to change his moral character." *Application of K.B.*, 434 A.2d 541, 545 (Md. 1981) (quotation omitted). Rather, after three years of molesting numerous female students, the sexual assaults terminated only when the applicant was arrested.

"In order to maintain public confidence in the bar and trust among members of the bar, attorneys must be honest in their dealings . . . ." *Carpenito's Case*, 139 N.H. 168, 174-75, 651 A.2d 1, 5 (1994). The offenses that culminated in the applicant's felony convictions, however, displayed the gravest abuse of the trust conferred upon him as a teacher. That he used his position of authority to his students' disadvantage is unquestioned. In their role as counselors, attorneys are conferred great trust and confidence by their clients; the applicant has failed to convince us that, given the opportunity, he would not breach such trust and confidence.

We by no means intend to discourage the positive personal and professional development that the applicant has achieved. But

> [t]he right to practice law is not one of the inherent rights of every citizen, as is the right to carry on an ordinary trade or business. It is a peculiar privilege granted and continued only to those who demonstrate special fitness in intellectual attainment and in moral character. All may aspire to it on an absolutely equal basis, but not all will attain it.

*In re Keenan*, 50 N.E.2d 785, 786-87 (Mass. 1943). The applicant has not met his burden of proving by clear and convincing evidence that he possesses the "good moral character" necessary for the practice of law. Any doubt concerning his character and fitness "should be

resolved in favor of protecting the public by denying admission to the applicant." *In re Jaffee*, 874 P.2d 1299, 1302 (Or. 1994).

We are mindful that there are situations where meaningful rehabilitation will overcome the prior taint of serious misconduct; this is not such a case. The applicant here, we believe, has failed to demonstrate the required "good moral character" to warrant admission to a profession that demands "not only ability of a high order, but the strictest integrity." *Ricker's Petition*, 66 N.H. 207, 250, 29 A. 559, 581 (1890) (quotation omitted).

*Application denied.*

All concurred.