Guardian ad Litem Board
No. 2009-227

APPEAL OF JEFFREY OLIGNY
(New Hampshire Guardian ad Litem Board)

Argued: January 21, 2010
Opinion Issued: July 20, 2010

Jeffrey Oligny, by brief and orally, *pro se.*

*Michael A. Delaney,* attorney general (*David M. Hilts,* assistant attorney general, on the brief and orally), for the State.

BRODERICK, C.J. The petitioner, Jeffrey Oligny, appeals a decision of the New Hampshire Guardian ad Litem Board (board) denying his application for certification as a guardian ad litem. We affirm.

The record contains the following facts. The petitioner submitted his application for certification to the board. Thereafter, the board invited him by letter to interview with it, indicating that it needed to clarify the nature of the petitioner's experience and work with children. It also sought additional information regarding two cases in the Rockingham County Superior Court involving domestic violence as well as a divorce case to which he had been a party. In its letter the board stated:

> Due to the nature of the work of a Guardian ad Litem, the Board considers issues of domestic violence to be a serious matter. Therefore, we would like to afford you the opportunity to clarify your history involving these allegations. We would request that you supply us with a copy of the divorce orders and any other documentation you feel is pertinent, which would alleviate the concerns of the Board.

The petitioner responded in writing, stating that he believed his experience as public policy director for the National Congress for Fathers and

Children (NCFC) for over five years fulfilled the board's requirement that applicants with bachelor's degrees have at least three years of experience in professional or volunteer activities dealing with children or incapacitated adults. *See* N.H. ADMIN. RULES, Gal 303.01(c)(1) (2007). He did not provide a copy of his divorce decree or any additional information regarding the domestic violence restraining orders previously entered against him. Rather, he requested clarification of the board's concerns, especially why it wanted a copy of his divorce decree, which he contended was "not a requirement [for] all Guardian ad Litem [applicants]."

In response to the petitioner's letter, the board informed him that it did not believe that his NCFC experience fulfilled the requirements of its rules, and that he needed to submit a log of professional and volunteer experience dealing "directly with children" and involving "interact[ion] with children." With regard to its earlier request that the petitioner submit a copy of his divorce decree and "any other documentation" pertinent to the domestic violence allegations, the board observed:

> It was the custom of courts, and sometimes still is, to dismiss restraining orders and to then put them into the divorce orders, so that there would be one set of orders rather than two. Also divorce orders are permanent and restraining orders are not, so the court sometimes felt this was a preferable course of action. The board has no way of knowing if this is what occurred in your case without reviewing the divorce orders. If this is the situation, then the board would have to decide whether this would be a disqualification for certification. We do not ask for divorce orders unless such a situation arises, in which case we would ask the same of anyone applying. . . .

The petitioner responded by letter. He submitted a log of his professional and volunteer experience, which included his NCFC experience, and asserted that his experience there met the requirements of the board's rules because it qualified as "activities dealing with children." He also provided a redacted copy of his divorce decree, but asserted that it was not required as part of the guardian ad litem applicant review process. The redacted copy of the petitioner's divorce decree consisted of the caption, the preamble, and the language of the restraining order, which provided:

> [T]he petitioner is enjoined and restrained from entering any premises occupied by the [petitioner's former wife]. Neither party shall interfere with the personal liberties of the other party. Neither party shall contract in the name of the other party or in any way subject the other party to liability for any debt or debts.

Shortly thereafter, the board sent the petitioner a letter denying certification and stating, among other things, that: (1) the log he submitted did not meet the board's requirement that applicants demonstrate engagement in volunteer or professional activities dealing "directly with children"; and (2) it continued to have concerns about the petitioner's abilities "to work with people in a constructive way" in light of the existence of a restraining order against him.

The petitioner requested that the board hold a hearing to reconsider its denial of his application. After the hearing was conducted, but before the board issued its decision, the petitioner was granted permission to submit evidence of his United States Department of Defense Security Clearance. Thereafter, the board denied the petitioner's application for certification, finding that he failed to meet his burden to prove that: (1) he is a person of good character; (2) he is "able to resolve conflict and work with people in a constructive way"; and (3) his work for NCFC met the requirements of NEW HAMPSHIRE ADMINISTRATIVE RULES, Gal 303.01(c), which requires an applicant to demonstrate direct work with children. With respect to the issue of "good character," the board found that the petitioner had failed to provide it with "full and frank" information, namely, an unredacted copy of his divorce decree. The board's finding regarding the petitioner's inability to resolve conflict was based upon the petitioner's failure to provide complete information about the restraining order and because the restraining order itself reflected an inability to resolve conflict. This appeal followed.

The petitioner argues that the board's findings are erroneous as a matter of law, and that the board erred in failing to find him to be a person of good character in light of his United States Department of Defense Security Clearance. We hold that the board's finding that the petitioner failed to demonstrate that "he is of good character in that he failed to provide full and frank information to the Board, specifically by providing only a redacted copy of his divorce decree despite a request from the Board that he provide the entire document," was not unjust or unreasonable. Therefore, we need not reach the petitioner's additional argument that his work for NCFC satisfied the requirement that an applicant demonstrate direct work with children.

A guardian ad litem is "[a] guardian, usu. a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party." BLACK'S LAW DICTIONARY 774 (9th ed. 2009); *see also* RSA 170-C:2, VI (Supp. 2009) (in statute governing proceedings to terminate parental rights "guardian ad litem" is defined as "a person appointed by the court to protect the interest of a minor or an incompetent in a case before the court"). For example, a court may appoint a guardian ad litem to represent

the interests of the children of parties in proceedings for divorce, separation, annulment, paternity, or determination of parental rights and responsibilities. RSA 461-A:16, I (Supp. 2009). Although a guardian ad litem serves primarily as an advocate for the best interests of the child, he or she also assists the court and the parties in reaching a prompt and fair determination, while minimizing acrimony in the process. *See Ross v. Gadwah*, 131 N.H. 391, 394 (1988); *Place v. Place*, 129 N.H. 252, 256 (1987). Although New Hampshire law does not require them to be attorneys, guardians ad litem do agree to serve as officers of the court. *See* RSA 461-A:16, II.

The board oversees "the credentialing and activities, and discipline of guardians ad litem in New Hampshire who are or have been certified by the board." RSA 490-C:1 (2010). Among other duties, the board is required to "[c]ompile and maintain a list of those guardians ad litem statewide who are certified and in good standing" and to "[e]stablish requirements [and] criteria . . . for the certification . . . of guardians ad litem." RSA 490-C:4, I (a), (c). In accordance with RSA 490-C:5, I (a), (c), the board has adopted rules setting forth, among other things, the application process for certification, and the eligibility requirements and criteria for certification, *see* N.H. ADMIN. RULES, Gal 300 *et. seq.*, which this court has adopted by reference. *See* SYSTEM-WIDE GAL APPLICATION, CERTIFICATION AND PRACTICE RULE 1.1. To be eligible for initial certification, an applicant must be, among other things, of "good character." RSA 490-C:5-a, I; N.H. ADMIN. RULES, Gal 303.01(h).

Appeals from decisions of the board are brought pursuant to RSA chapter 541 (2007). *See* RSA 490-C:8. Accordingly, the appealing party has the burden to prove that the decision of the board is clearly unreasonable or unlawful. *See* RSA 541:13. The board's decision will "not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." *Id.* The board's findings of fact are deemed *prima facie* lawful and reasonable. *Id.*

■ Neither the statute nor the rules define the term "good character." We note, however, that to be admitted to practice law in this state, an applicant is required to possess "good moral character." RSA 311:2 (2005). In that context, we have stated that among the essential aspects of "good character" are "respect for the rights of others and for the law, fairness, trustworthiness and reliability, and a professional commitment to the judicial process and the administration of justice." *Application of T.J.S.*, 141 N.H. 697, 699 (1997) (quotation omitted). We also note that the Standing Committee on Character and Fitness of the Supreme Court of

New Hampshire may recommend that an applicant be denied admission to the bar for lack of character and fitness for, among other things, an applicant's failure to cooperate with or to provide information to the committee or its staff. *See* SUP. CT. R. 42B (VII) (5). Because a guardian ad litem, like an attorney, serves as an officer of the court, we believe that these considerations are also instructive in determining whether an applicant has demonstrated that he is of sufficient "good character" to serve as a guardian ad litem.

The petitioner's application indicated that he had been a party to two cases relating to domestic violence and to one relating to divorce. This prompted the board to ask him to "clarify" his history involving the allegations of domestic violence, and to provide copies of the divorce orders and "any other documentation" he felt was pertinent to "alleviate" the concerns of the board. The petitioner initially declined to provide a copy of the divorce decree until the board explained why it was necessary, and was not forthcoming about the nature and circumstances of the restraining orders. The board then clarified that it was requesting a copy of the divorce orders because it recognized that it was the custom of courts to dismiss restraining orders and include them in the divorce decrees. The board informed the petitioner that it wanted to know whether he was currently subject to any restraining order, and, if so, whether this would disqualify him for certification. Thereafter, the petitioner provided a redacted copy of his divorce decree which made clear that he was still subject to a restraining order, but the redacted decree otherwise shed no light on the circumstances that gave rise to the restraining order.

■ The petitioner's actions during the proceedings before the board support the conclusion that he refused to provide an unredacted copy of his divorce decree, despite the fact that the board sought it in order to alleviate its concerns about the existence and nature of the restraining orders against him. We hold that the record amply supports the board's conclusion that the petitioner failed to demonstrate that he is a person of "good character" because he failed to provide full and frank information to the board when requested to do so as part of his application for certification as a guardian ad litem.

■ Furthermore, we find unpersuasive the petitioner's argument that the board did not have the authority to request an unredacted copy of his divorce decree. The board's rules authorize it to request additional information or material in order to determine an applicant's qualifications. N.H. ADMIN. RULES, Gal 302.01(c). The board was justifiably concerned about the existence of the restraining order because "[d]ue to the nature of the work of a Guardian Ad Litem, the Board considers issues of domestic

violence to be a serious matter." The board also recognized the custom of courts to dismiss restraining orders and incorporate them into divorce decrees, *see In re Peirano*, 155 N.H. 738, 742-43 (2007), and, therefore, requested that the petitioner provide a copy of the unredacted divorce decree. Because divorce decrees may contain narratives related to the history of the family, and any issues or problems the family faces, and because such a narrative could contain a recitation of facts relevant to the restraining order, we conclude that it was not unreasonable or unlawful for the board, under the circumstances of this case, to request an unredacted copy of the decree.

We are also unpersuaded by the petitioner's argument that the board erred as a matter of law because, after he submitted the redacted copy of the divorce decree, he was never notified that his submission was considered incomplete. According to the petitioner, upon receipt of the redacted copy, the board should have issued a subsequent request for additional information pursuant to New Hampshire Administrative Rule, Gal 302.01(c). We agree with the State, however, that nothing in the rules or RSA chapter 490-C suggests that the board is obligated to continue to issue further requests for additional information. This is particularly true where the board had already specifically invited the petitioner to "clarify [his] history" involving the domestic violence allegations, and to provide "any other documentation" which would alleviate the concerns of the board. Under the circumstances of this case, the board did not err in construing the applicant's submission of the redacted decree as a refusal to provide the entire divorce decree it had requested.

We also disagree with the petitioner that the board erred when it found him not to be of good character in light of the evidence he submitted of his United States Department of Defense Security Clearance. While the security clearance may be evidence of the petitioner's good character, it is not dispositive of the question. We do not agree with the petitioner that the board ignored the security clearance evidence, but conclude from our review of the record that the board weighed the evidence before it and came to an independent determination of the petitioner's character. In light of the existence of the restraining order and the petitioner's failure to provide an unredacted copy of his divorce decree or other information regarding the restraining order, the board did not err when it concluded that the petitioner had failed to demonstrate that he was a person of good character.

*Affirmed.*

DALIANIS, DUGGAN, HICKS and CONBOY, JJ., concurred.