Committee on Character and Fitness
No. ADM-2009-024

# APPLICATION OF G.W.

Argued: November 10, 2010
Opinion Issued: January 26, 2011

*Baker & Hayes*, of Lebanon (*Patrick T. Hayes* on the brief and orally), for the applicant.

*Thomas V. Trevethick*, deputy general counsel, of Concord, on the brief and *James L. DeHart*, general counsel, of Concord, orally, for the Committee on Character and Fitness.

CONBOY, J. The applicant, G.W., seeks admission to the New Hampshire Bar. The Standing Committee on Character and Fitness of the Supreme Court of New Hampshire (the Committee) filed two adverse reports recommending that the applicant be denied admission. We then issued an order instructing the applicant to show cause why his application should not be denied. *See* SUP. CT. R. 42(5)(k). Thereafter, both parties were permitted to file briefs or memoranda, and oral argument was held. We now deny the application.

Supreme Court Rule 42(5)(a) states: "All persons who desire to be admitted to practice law shall be required to establish their moral character and fitness to the satisfaction of the Standing Committee on Character and Fitness of the Supreme Court of New Hampshire in advance of such admission." The burden of establishing fitness to practice law rests upon the applicant. *Application of Appell*, 116 N.H. 400, 401 (1976). The applicant must prove good moral character and fitness by clear and convincing evidence. *Application of T.J.S.*, 141 N.H. 697, 699 (1997). Any doubt concerning character and fitness should be resolved in favor of protecting the public by denying admission to the applicant. *Id.* at 702-03.

As a general rule, we accord deference to a fact finder's determination of witness credibility and resolution of disputed questions of fact. *Id.* at 699. Nevertheless, the Committee's recommendation is advisory only and neither binds this court nor limits our authority to take action. *Id.*

The following facts are either evidenced in the record or are not disputed by the parties. Between 1991 and 2007, the applicant applied to sit for the New Hampshire bar examination seven times. During this period, he reported several criminal convictions to the Committee: (1) a reckless

conduct conviction stemming from an incident on April Fools' Day, 1993, when the applicant "pretended to be a robber" at a store in North Conway; (2) six convictions in Caledonia County (Vermont) District Court in 1999 for violating the conditions of a restraining order; (3) a 2001 criminal threatening conviction; and (4) a 2004 conviction for driving while intoxicated (DWI). In addition, according to his brief in this matter, the applicant disclosed various financial obligations. On his initial application, dated November 30, 1991, he noted approximately $40,000 in student loans. By the time of his November 27, 2007 application, the reported debt owed to the U.S. Department of Education had increased to $138,471.42.

The applicant was ultimately successful on the February 2008 bar examination. In May 2008, the Committee interviewed the applicant and subsequently submitted a report recommending that he not be admitted to the bar. The applicant requested a hearing at which he would have the opportunity to address the concerns expressed by the Committee. *See* SUP. CT. R. 42(5)(j). That hearing was conducted in January 2009. On February 17, 2009, the Committee submitted a second negative report, detailing the results of the hearing and concluding that the applicant had failed to meet his burden. As grounds to deny his admission, the Committee cited the applicant's history of criminal acts, *see* SUP. CT. R. 42B(VII)(6), financial irresponsibility, *see* SUP. CT. R. 42B(VII)(11), and inability to handle his own affairs, *see* SUP. CT. R. 42B(VII)(14).

The Committee found that "[the applicant] used the fact that he was injured in an automobile accident as an excuse for his failure to have taken and passed the bar over the past 20 years and his failure to have paid off his student loans." At the time of the hearing, the applicant was living in his mother's house. He had been working at her motel part-time in lieu of rent, but the motel had gone into foreclosure. In 2008, he briefly held two positions as a bartender. He quit the first bartending job, explaining to the Committee, "I didn't enjoy the service business. I felt it was beneath me." According to the Committee's report, other than these positions and a job as a waiter in 1996, the applicant has not held gainful employment since his law school graduation almost twenty years ago.

In response to the question of why he had not considered seeking other employment in order to make payment on his loans, the applicant told the Committee that,

> if I owed a measly $30,000, that's an amount of money that certainly could be paid off with a, you know, $10 an hour job or something of that nature. But because there's $120,000 worth of interest on that $30,000 principal, realistically, I need a good job

in order to pay that off. And I was trained to practice law[;] I wasn't trained to do anything else. And I have no desire to do anything else at this point.

He also asserted to the Committee that, as a consequence of being on an income-contingent repayment plan, he was current on his student loan obligations.

The applicant brought copies of three credit reports to the hearing. He admitted that he had handwritten "AAA perf. credit" on one of them and told the Committee, "[I]f we could, you know, skip that little superficial aspect of the report, if you look at the reports, all three of them, what you'll find is that I have been extremely responsible and I have not, you know, even been late with any credit card debt." Yet, on his July 2002 Petition and Questionnaire for Admission to the New Hampshire Bar, he reported $15,000 in delinquent credit card debt. When questioned, "he indicated that the statute of limitations has run, it was a long time ago, and he doesn't currently remember the details."

When questioned about his criminal record, the applicant stated that he lacked mens rea for each of his nine convictions. With respect to the reckless conduct conviction based on his "pretending to be a robber," the applicant explained, "I was on SSI for six months directly following that incident, so that alone would demonstrate no mens rea. But supplemental to that was the fact that it happened on April Fool's Day. It was a bad joke. I'd say those would be the two reasons." At a previous interview, the applicant had also discussed the incident. At that time, the applicant told the interviewer that he "was writing a book at the time and wanted to see what the store clerk's reaction would be when he showed her a knife with a blade between six and seven inches in length."

When questioned about his six convictions for violating a restraining order, the applicant asserted that he had been "framed." As evidence of this, he produced a motion to dismiss the restraining order and stated:

[W]hat I have here is a motion that was filed by the complainant. It's a motion to dismiss the complaint and the temporary restraining order basically, because it's not true, it says here in pleading 1; pleading 2 says that her father had forced her to lie.

However, the applicant admitted that he had written the motion to dismiss and had the complainant sign it. He was convicted of having violated the terms of the restraining order by sending her copies of motions. At the Committee hearing, he admitted that he had violated the restraining order in several ways: "I had tried to call her. I had tried to call a friend. I was within 1,000 feet of her house." However, he asserted,

I didn't have the mens rea because I believe that she — it may sound fantastic, but she had told me the last time that she was being held in her house, locked up, her keys were being — had been taken, her money was taken, her purse, whatever, so in that sense, I lacked a mens rea because I was trying to see what was going on, to see if she was being held there.

The record does not reflect any statement by the defendant concerning his 2004 DWI conviction.

In concluding its report, the Committee stated, "[The applicant]'s inability to responsibly deal with his personal financial obligations, his inability to accept responsibility for his criminal conduct, and his practice of placing blame on other individuals or events for his conduct, are all indicative of his inability to responsibly deal with his own affairs." With respect to his financial problems, the Committee stated that it "does not believe that [the applicant] has made any type of sincere attempt to find employment during the last 20 years that would allow him to make payments on this loan obligation." Moreover, the Committee found that, "[r]egardless of which excuse [the applicant] puts forth for his conduct, it was clear to the Committee that [the applicant] does not accept responsibility for any of his criminal acts."

Following the issuance of the Committee's February 17, 2009 negative report, we ordered the applicant to show cause why his application for admission should not be denied. The applicant filed a responsive pleading on April 29, 2009. On May 5, 2009, the applicant filed a notice of appeal of a superior court decision affirming the administrative suspension of his driver's license following his October 8, 2008 arrest for DWI Second Offense, a charge of which the Committee was previously unaware. We then remanded this matter to the Committee for consideration of the new information.

Counsel for the applicant informed the Committee that the applicant had been convicted of the DWI Second Offense charge in district court, had appealed that charge and was awaiting a jury trial in superior court. He had also appealed the administrative suspension of his license to the superior court and, subsequently, to this court. Counsel also reported to the Committee that the applicant had been charged with "driving after revocation or suspension" and "violation of a bail condition." The applicant's counsel requested that any further hearing on the applicant's bar admission be deferred until the pending matters were resolved. The Committee assented.

On October 7, 2009, the Committee wrote to the applicant's counsel reminding him of Supreme Court Rule 42(8), which requires that the oath

of admission must be administered to an applicant within two years from the time the applicant is notified of successfully passing the bar examination.

At the request of the applicant's counsel, the Committee scheduled a hearing and asked that the applicant update the Committee on events relevant to its consideration of his character and fitness. In response, the applicant wrote to the Committee informing it that, in December 2009, he had been charged with attempted fraudulent handling of recordable writings, in violation of RSA 638:2 (2007) and RSA 629:1 (2007), and false swearing, in violation of RSA 641:2 (2007).

In response to the Committee's request for more information on these charges, the applicant explained that he had filed a *lis pendens* with the Grafton County Registry of Deeds claiming a tenancy in common interest in his mother's foreclosed house, in which he was living. He stated:

> I am very sorry that I filed that document. It was a mistake. I take full responsibility for my actions. To be candid, my passions were aroused, & I had a fool for a lawyer. I did not research the law prior to the filing. Had I done that, I would have discovered that in N.H., an individual needs prior court approval, before filing such a document. I never obtained prior court approval. I am sorry. I was ignorant, & I realize that ignorance of the law is no defense.
>
> . . . .
>
> My defense, if I decided to have another fool for a lawyer, would be that I lacked any mens rae [*sic*], that I was not trying to falsify the deed, but rather, put potential Bona Fide Purchasers on notice that I intended to sue the bank.

As to the false swearing charge, the applicant explained that the charge stemmed from a hearing in superior court in August 2009 during which he had sworn that he had no interest in real estate. The Committee found that these charges fall within the scope of Rule 42B(VII)(2), Acts Involving Dishonesty, Fraud, Deceit, or Misrepresentation. We note that both charges are scheduled for trial in early 2011.

The Committee reconvened the hearing on the applicant's application for admission on March 11, 2010. When questioned about his DWI and driving after suspension convictions, the applicant indicated that he had represented himself in these cases and "believe[d] that he irritated both the prosecutor and the police and the results of the current charges reflect that irritation." He also indicated that if he did not prevail on his appeals, he faced at least a five-year suspension of his driver's license.

As evidence of conduct following the 2009 negative report that might cause the Committee to change its recommendation, the applicant pointed to counseling sessions about his alcohol consumption. He also presented a report about his court-ordered seven-day alcohol treatment program. "He argued that the report indicated that he is not an alcoholic, or the counselor would have ordered more counseling." However, he admitted that he would not have entered the program willingly.

With regard to his lack of candor towards the Committee in failing to report his recent criminal charges, the applicant claimed it "was not done intentionally," and stated, "I just kind of assumed that it didn't matter because you had already rejected me and you weren't going to change your mind . . . ."

After the hearing, the Committee voted to confirm its earlier recommendation that the applicant be denied admission to the bar. Its report of April 20, 2010, concludes, "[T]he Committee remains even more persuaded that [the applicant] does not possess the necessary character and fitness for admission to the Bar of New Hampshire." The report supplemented the February 17, 2009 report and identified three additional grounds for denying admission under Supreme Court Rule 42B(VII): Acts Involving Dishonesty, Fraud, Deceit or Misrepresentation, *see* SUP. CT. R. 42B(VII)(2); False or Misleading Statements or Omissions in the Application Process, *see* SUP. CT. R. 42B(VII)(3); and Criminal Acts, *see* SUP. CT. R. 42B(VII)(6).

> ■ A central purpose of requiring character review as part of the attorney-admission process is to protect those members of the public who might become clients of the practicing lawyer from those attorneys who are so morally or ethically challenged that they are unable to demonstrate the type of good character and moral fitness requisite to serving in a fiduciary capacity.

*In re Roots*, 762 A.2d 1161, 1167 (R.I. 2000).

■ We first address the applicant's criminal record. While a criminal conviction is not an automatic bar to admission, *see Application of T.J.S.*, 141 N.H. at 699, the record here reflects numerous convictions over an extended period of time, several of which occurred after his current application. We note that the Committee pointed out that the applicant "does not accept responsibility for any of his criminal acts," nor "understand the criminality of his conduct, especially as it relates to violating a restraining order." While claiming to take responsibility for his actions, he simultaneously tried to excuse them. "The totality of the evidence presented suggests a failure to accept the responsibilities placed upon [the

applicant] and a lack of mature respect for the law." *In re Application of Wagner*, 893 N.E.2d 499, 502 (Ohio 2008) (denying applicant's admission where applicant had concealed drunk driving arrest during interview with bar association, failed to pay subsequent fine, and "continued to debate the validity of her conviction during the board proceedings by blaming everyone but herself"). For example, he claimed to take full responsibility for allegedly filing a fraudulent *lis pendens*, but in the same letter, attempted to excuse his conduct by saying that he was not trying to falsify the deed and therefore lacked the mens rea for the offense.

■ The applicant's outstanding debts are equally of concern. "Being in debt or unable to stay current with debts is not in itself disqualifying." SUP. CT. R. 42B(11) comment. The applicant admits that 90% of his student loan debt is comprised of interest. There is no evidence that he has ever made significant efforts at repayment. His assertion that he has dealt with these debts "in a responsible manner" is disingenuous at best. His argument that only employment as a lawyer will allow him to earn sufficient income to pay off these loans is unavailing. As the applicant admitted, he would have been able to repay the original amount in less remunerative employment. It is the applicant's neglect of his obligations that has allowed his debts to grow to unmanageable proportions. The applicant fails to recognize that the duty to pay one's debts is not contingent upon finding the employment of one's choice. *See In re Anonymous*, 875 N.Y.S.2d 925 (Sup. Ct. 2009) (denying the applicant's petition for admission where the applicant had $430,000 in delinquent student loans, disbursed over a twenty-year period, had been inflexible in dealing with his lenders, and had never made any substantial payments), *appeal dismissed*, 925 N.E.2d 94 (N.Y. 2010); *In re Application of Kline*, 877 N.E.2d 654, 655 (Ohio 2007) (disapproving applicant's admission where applicant had demonstrated pattern of leaving jobs due to "personal dissatisfaction" with the required duties despite having outstanding debts).

■ We conclude that the record demonstrates the applicant's inability to handle his own affairs. *See* SUP. CT. R. 42B(VII)(14) ("The practice of law often involves being entrusted with the affairs of clients. The inability of an applicant to handle his/her own affairs in a responsible manner may be grounds for finding that such an applicant does not possess the requisite fitness to engage in the practice of law."). An attorney may be called upon to counsel clients on meeting their financial obligations and must be trusted with properly managing client funds. N.H. R. PROF. CONDUCT 1.15. The applicant's inability to recognize the significance of his own financial responsibilities does not engender confidence in his ability to do either.

■ Finally, we address the applicant's lack of candor with the Committee. The applicant failed to update his petition in a timely fashion, not once, but three times. At the time of his first hearing, the Committee was unaware of the applicant's 2008 DWI arrest, yet the applicant did not inform the Committee of that charge. Second, the applicant did not report his arrests for driving after suspension, and violation of a bail condition until more than a month later, after the Committee had scheduled his second hearing. Third, it was only in February 2010, after the Committee rescheduled the second hearing, that the applicant informed it of his December 2009 false swearing and attempted fraudulent handling charges.

■ During the second hearing, once again, the applicant attempted to minimize his own responsibility by saying that his omissions were not intentional, but later admitted that he "just kind of assumed that it didn't matter because you had already rejected me and you weren't going to change your mind." His "choice not to disclose in the face of [his] known obligations . . . impinges upon his character and fitness to practice law, irrespective of any purported ultimate intent." *Application of Strzempek*, 962 A.2d 988, 995 (Md. 2008) (denying application to the bar where applicant failed to inform Committee of conviction for driving while intoxicated and several charges stemming from the same incident, despite having been released from jail only nine days before his interview). "His lack of candor clearly frustrated the intent, as well as the purpose of the Character interview, upon which we rely for assessment of good character." *Id.*

Supreme Court Rule 42B(XIII) allows us to consider several factors in determining whether an applicant has demonstrated sufficient rehabilitation. As noted above, the Committee found that the applicant was insincere in his efforts to meet his financial responsibilities and to take responsibility for his criminal conduct. During his hearings before the Committee, the applicant was asked what positive characteristics he could point to that would support his admission. He cited his ability to pass the bar examination nearly twenty years after graduating from law school, describing this as "an amazing accomplishment." During his second hearing, he cited counseling sessions concerning his alcohol use, as well as his participation in a court-ordered alcohol treatment program. However, he admits he would not have entered the treatment program voluntarily. In light of the applicant's continuing pattern of irresponsibility, we do not conclude that he has demonstrated a genuine change of attitude.

At oral argument, the applicant's attorney proposed that the applicant be admitted on a probationary status. He proposed several conditions, including that the applicant consult with a mentor, report to this court on a

regular basis, and undergo substance abuse treatment. However, as counsel for the Committee pointed out, any doubt about an applicant's character and fitness must be resolved in favor of protecting the public and denying admission. SUP. CT. R. 42B(V). We do not believe any conditions could adequately safeguard the public.

■ We appreciate that the applicant, as his counsel recounts, has overcome mental and physical difficulties. However, taken as a whole, the record reflects an individual with a long history of evading his financial obligations, as well as failing to accept responsibility for the consequences of his poor judgment and criminal behavior. We see no evidence that, as an attorney, the applicant would conduct himself any differently.

Based upon our review of the evidence, we hold that the applicant has not satisfied his burden of proving, by clear and convincing evidence, his fitness to practice law.

*Application denied.*

DALIANIS, C.J., and DUGGAN and HICKS, JJ., concurred.